[No. 11419–1–I.   Division One.   February 27, 1984.]

COUPEVILLE SCHOOL DISTRICT NO. 204, *Respondent*, v.
ARCHIE W. VIVIAN, *Appellant.*

*Cogdill, Deno & Millikan, W. Mitchell Cogdill, Jr.,* and *Kent Millikan,* for appellant.

*Anderson, Hunter, Dewell, Baker & Collins* and *G. Douglas Ferguson,* for respondent.

JOHNSEN, J.*—Archie W. Vivian appeals from a judgment affirming his discharge by the Coupeville School District and reversing the decision of a hearing officer.

Vivian was discharged from his employment with the school district as a secondary schoolteacher and boys' basketball coach because of an incident involving two 16–year-old girls. Vivian requested a hearing on the matter. Following the hearing, the hearing officer, in an order dated May 1, 1981, determined that the District did not have sufficient cause to discharge Vivian and restored him to his teaching position and awarded reasonable attorneys fees.

The Board of Directors of the District voted to seek judicial review of the findings of fact, conclusions of law and final decision entered by the hearing officer. On May 29, 1981, the District filed its petition for writ of certiorari. Thereafter Vivian filed a motion to dismiss the writ on the ground that it was not timely filed. After having initially

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

granted Vivian's motion to dismiss, the Superior Court reconsidered its prior ruling and determined the petition was timely filed. The court later entered an order granting the District's motion for summary judgment because there was no genuine issue of material fact and denying Vivian's cross motion for summary judgment. Thereafter the court awarded judgment in favor of the District and dismissed Vivian's appeal. Vivian appeals from this judgment.

■ The first issue is whether the District's petition for certiorari was timely filed. No specific statute provides for judicial review by a school district of an adverse ruling in a teacher discipline proceeding. Review is, however, available to school districts by statutory writ of certiorari as authorized by RCW 7.16.040. *Kelso Sch. Dist. 453 v. Howell,* 27 Wn. App. 698, 700–01, 621 P.2d 162 (1980). No statute or rule states the time in which an application for writ of certiorari must be filed. *State ex rel. L.L. Buchanan & Co. v. Washington Pub. Serv. Comm'n,* 39 Wn.2d 706, 709, 237 P.2d 1024 (1951). Consequently, courts have long held that a writ of certiorari should be applied for within a reasonable time after the act complained of has been committed. *State ex rel. Home Tel. & Tel. Co. v. Kuykendall,* 134 Wash. 620, 622, 236 P. 99 (1925). To help determine the reasonableness of the time within which the writ must be filed, courts have applied the following rule:

> [W]here the remedy by appeal would not be adequate, or where no appeal is provided, an application for a writ of review must be made at least within the time for appeal.

*State ex rel. Clark v. Superior Court,* 167 Wash. 481, 484, 10 P.2d 233 (1932). In this case, the most analogous time for appeal is found in RCW 28A.58.460, a statute governing the appeal by school district employees of hearings concerning adverse changes in their status. That statute provides that an employee must appeal within 30 days. By analogy, the reasonable time in which the District had a right to make an application for a writ of certiorari would be the same as that fixed for any appeal by an employee of the District pursuant to RCW 28A.58.460.

The Court of Appeals decision in *Vance v. Seattle,* 18 Wn. App. 418, 569 P.2d 1194 (1977), cited by Vivian in his brief, is distinguishable on its facts. Unlike this case, in *Vance* there was absolutely no statute or rule specifically providing either party with the right of direct appeal from the adverse ruling. Inasmuch as the District petitioned for certiorari within the 30–day time period, the Superior Court did not err in denying Vivian's motion to dismiss because the writ of certiorari was not timely filed.

Review by certiorari was authorized by RCW 7.16.040. The questions to be determined by the court were:

(3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.

(4) Whether there was any competent proof of all the facts necessary to be proved, in order to authorize the making of the determination.

(5) If there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence thereof, rendered in an action in a court, triable by a jury, as would be set aside by the court, as against the weight of evidence.

RCW 7.16.120.

An inferior tribunal in making its decision violates a rule of law if it fails to find the ultimate material facts necessary to sustain its conclusion and determination, *Andrew v. King Cy.,* 21 Wn. App. 566, 574, 586 P.2d 509 (1978), and the decision of a hearing officer may be set aside if the officer is found to have violated constitutional principles, exceeded his statutory jurisdiction or committed clear error of law, or his decision is found to be arbitrary and capricious. *Kelso Sch. Dist. 453 v. Howell, supra.* The test for competency and sufficiency of the evidence expressed in the last two sections of the certiorari statute, RCW 7.16.120(4) and (5), is essentially the same as that for action which is arbitrary and capricious. *Andrew v. King Cy., supra.*

We turn, then, to the decision of the hearing officer in this case. The notice of probable cause for discharge dated May 12, 1980, set forth the following reasons, among others,

for its issuance:

1. Supplying or permitting two minors, under the age of 21 years, to consume liquor on your premises or premises under your control, on or about December 27, 1979, knowing said minors to be students, potential students or former students of the District contrary to RCW 66.44-.270; and/or

. . .

4. In addition to and taken with any of the foregoing causes, your exercise of extremely poor and unprofessional judgment and/or conduct, on or about December 27, 1979, by meeting two (2) minor females, under the age of 17 years, on the school premises and then driving said minors to the privacy of your home and entertaining them both, unchaperoned, while the girls were under the influence of intoxicants, and allowing at least one of them to ingest or imbibe additional intoxicants until she became unconscious and ill, while in your care, and your failure to provide adequate care, assistance, guidance, direction and supervision contrary to RCW 28A.05.010, and accepted standards of professional behavior . . .

At the conclusion of the hearing the officer made certain findings of fact, a portion of which is as follows:

5. The following events occurred on December 27, 1979:

A. At about 3:30 to 4:00 p.m., Sondra [B.], a student in one of Petitioner's classes, and Sherri [E.], a former student of Petitioner, both of whom were sixteen years of age at the time, came to Respondent School District coach's office at the new gym to see Petitioner.

B. At that time, Petitioner had just concluded basketball practice in preparation for a basketball game at another school district the following day.

C. The two girls were carrying a large bag which contained a fifth of Jim Beam whiskey. The two girls intentionally carried the bottle in a large bag so that Petitioner would not know that they were carrying a bottle of liquor.

D. The two girls asked Petitioner if they could go to his house where they understood him to have a pool table and play pool. Petitioner consented to this request and drove the two girls in his car to his house, arriving there sometime between 4:00 and 4:30 p.m.

E. Once at the Petitioner's house, the girls gave him the bottle of whiskey as a Christmas gift.

F. Petitioner told the girls he could not drink with them but, at their urging, he did have a drink from the bottle. Shortly thereafter, the girls started pouring themselves drinks from the bottle. Although Petitioner saw them do this he did not in any way attempt to stop them.

G. Petitioner and the two girls stayed at his house for approximately four and one–half hours talking and playing pool. During that period of time, Petitioner saw the girls refilling their glasses with whiskey at least twice and the entire bottle of whiskey was consumed. Petitioner also saw at least one of the two girls drink beer which he had in the refrigerator and again made no attempt to stop her from doing this.

H. Petitioner did observe that Sherri [E.] was becoming intoxicated and, in fact, warned her against spilling her drink on the pool table. Sometime during the evening [E.] did become intoxicated and, in fact, passed out on one of the beds in the bedroom.

I. Sometime during the [evening], Petitioner discovered that [E.] had passed out on the bed in the bedroom. During the course of his attempting to wake her he found himself in a situation in which [E.] vomited, wet the bed and removed her clothing. After about fifteen or twenty minutes, Petitioner was able to convince [E.] to get [d]ressed and they joined [B.], who had stayed in the rec room where the pool table was. During this period of time, Petitioner was attempting to get [E.] ready to leave and cleaning the mess made by [E.]'s vomiting and wetting the bed.

J. Thereafter, Petitioner drove [B.] and [E.] to the [B.] home where he left them at the front door. From [B.]'s house, [E.] called her mother, . . . and told her that she had been raped but she would not tell her mother who had done it. As a result [E.'s mother] informed the police, came to [B.]'s home to pick up her daughter, [E.], and took her to the hospital for an examination.

K. Petitioner did not engage in any sexual misconduct with either girl.

In addition the officer found as follows:

14. On July 15, 1980, Petitioner pled guilty to one count of furnishing liquor to a minor and on that same date Judge Patrick issued an order deferring imposition

of sentence and granting probation.

16. There is no evidence that Petitioner has ever been disciplined in his twenty–three years of teaching.

The officer then summarized the testimony of the several witnesses consisting of parents, school board members, administrative officers, teachers and student counselors, some of whom testified that in their opinion Vivian's misconduct impaired his effectiveness as a teacher and some of whom testified that it did not.

After making the foregoing findings of fact the officer gave his conclusions and the reasons therefor as follows:

Here it is clear that Petitioner, to paraphrase Paragraph 1 of the notice of probable cause, did supply and permit two minors under the age of twenty–one years to consume liquor on premises under his control on or about December 27, 1979, knowing said minors to be students or former students of Respondent District and such action was in violation of RCW 66.44.270. Further, it is clear, to paraphrase Paragraph 4 of the notice of probable cause for discharge, that Petitioner exercised extremely poor and unprofessional judgment by conducting himself as he did on December 27, 1979. Thus, it is clear that Respondent has established conduct by Petitioner which was specified as causes for discharge in the notice of probable cause.

. . .

It is my personal belief that the conduct of the Petitioner in this matter demonstrated a substantial exercise of poor judgment on his part. However, keeping in mind the factors cited by the *Hoagland* [*v. Mount Vernon Sch. Dist. 320*, 95 Wn.2d 424, 623 P.2d 1156 (1981)] court and the testimony of various witnesses, I cannot find that the Respondent School District has demonstrated by a preponderance of the evidence that Petitioner's conduct will materially and substantially effect [*sic*] his teaching performance if he is returned to the classroom.

Accordingly, petitioner was restored to his employment.

In considering whether the hearing officer committed error of law in doing so we are governed by those prior decisions in this jurisdiction in which the dismissal of teachers has been reviewed. The hearing officer relied solely

upon *Hoagland v. Mount Vernon Sch. Dist. 320,* 95 Wn.2d 424, 623 P.2d 1156 (1981) and two cases cited therein, *Board of Educ. v. Jack M.,* 19 Cal. 3d 691, 566 P.2d 602, 139 Cal. Rptr. 700 (1977) and *Weissman v. Board of Educ.,* 190 Colo. 414, 547 P.2d 1267 (1976).

*Hoagland* decided that a felony conviction based on possession of a stolen motorcycle without consideration of its effect upon one's fitness to teach was not sufficient cause for dismissal. The court cited as its authority *Gaylord v. Tacoma Sch. Dist. 10,* 88 Wn.2d 286, 559 P.2d 1340, *cert. denied,* 434 U.S. 879 (1977); *Browne v. Gear,* 21 Wash. 147, 57 P. 359 (1899); *Board of Educ. v. Jack M., supra,* and *Weissman v. Board of Educ., supra.* In none of these cases had the teacher been convicted of any criminal offense. Gaylord was an admitted homosexual, Jack M. had behaved in a lewd manner in a public place, and *Browne v. Gear, supra,* is an 1899 case involving a teacher who employed inconsiderate language.

■ Be that as it may, *Hoagland* is now authority for the proposition that conviction of crime without more is not cause for teacher dismissal, and the courts generally are agreed that misconduct of a teacher must materially and substantially affect the teacher's performance to support a dismissal. Some of the factors which are relevant in establishing sufficient cause were first delineated in *Morrison v. State Bd. of Educ.,* 1 Cal. 3d 214, 231, 461 P.2d 375, 82 Cal. Rptr. 175 (1969). They have been approved in Colorado, *see Weissman v. Board of Educ., supra,* and now in this jurisdiction. They are not, however, exclusively definitive. "Human conduct is infinitely various, and it would be folly to attempt to isolate any limited set of criteria as determinative." *Weissman v. Board of Educ., supra* at 421.

We discuss these facts as follows:

1. *The age and maturity of the students.*

The officer found that the Coupeville School District had 700 plus students and that petitioner taught junior and senior high school students. He made no finding relating to

population of the particular school or the community. The trial court judicially noticed that Vivian's school had 318 students and 38 administrative and teaching personnel and that the town's population was 1,010.

2. *The likelihood the teacher's conduct will have adversely affected students or other teachers.*

The testimony was conflicting and by its very nature could not be factual. Adverse opinions came from parents and administrators; positive from fellow teachers and counselors. The hearing officer found that it was the general consensus that Vivian condoned teen drinking but based on the opinions of Vivian's witnesses that his conduct would not influence nondrinkers.

The officer made no finding as to the length of time required to erase any adverse impact of Vivian's conduct, though his own witnesses testified that it would take from 1 year to a year and 9 months.

3. *The degree of the anticipated adversity.*

The officer made no finding relating to the attitude of the community to teenage drinking or the publicity engendered by Vivian's conduct, although the testimony established that Coupeville has such a problem, that parents and teachers are deeply concerned, and that there was widespread publicity of the incident, particularly after Vivian's conviction.

4. *The proximity or remoteness in time of the conduct.*

The incident occurred on December 27, 1979; Vivian was suspended on January 14, 1980; the superintendent notified Vivian of probable cause for discharge on May 12, 1980. The officer made no finding that the District acted promptly, but certainly that was the case.

5. *The extenuating or aggravating circumstances surrounding the conduct.*

The officer found both extenuating and aggravating circumstances surrounding Vivian's conduct. Vivian had not

been disciplined in 23 years of teaching, and his dismissal might diminish, if not eliminate, his chance of securing similar employment. But there was no finding that Vivian's conduct was "an isolated act precipitated by an unusual accumulation of pressure and stress" and there was no evidence to support such a finding if there had been one. *See Board of Educ. v. Jack M., supra.* It should be noted that Vivian's certificate to teach in this state was not affected by his dismissal as was the case in *Morrison v. State Bd. of Educ., supra.*

6. *The likelihood that the conduct may be repeated.*
The hearing officer found:

[T]here is nothing in his record to indicate that he would engage in such conduct again. He has indicated on the record that he would not do so and I am convinced by what I find to be his love and enthusiasm for teaching that he in fact will not do so. He has stated that he would attempt in his courses, if he is reinstated, to use himself and others in literature as examples of the problems alcohol use can cause.

7. *The motives underlying the conduct.*
The hearing officer was unable to say why Vivian allowed the two girls to drink whiskey in his home on the evening in question. "Motive" has been defined as:

"An inducement, reason, cause or incentive, for the doing of an act; some cause or reason that moves the will and induces action; that condition of the mind which incites to the action; that which impels the will to action, culminating in a definite result whether it be benign or malign; that which stimulates or incites an action . . .

*State ex rel. Troy v. Yelle,* 27 Wn.2d 99, 105, 176 P.2d 459, 170 A.L.R. 1425 (1947), quoting 42 C.J. *Motions and Orders* 561 (1927). In reviewing the hearing officer's finding as to motive, we are left to speculate whether Vivian had a motive and, if so, whether he intended a malign or benign result.

8. *Whether the conduct will have a chilling effect on the rights of the teachers involved or of other teachers.*

*Hoagland* incorrectly paraphrases this factor. *Morrison v. State Bd. of Educ., supra* at 229 suggests that it is

the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers.

The hearing officer made no finding with reference to either the adverse impact or chilling effect upon other teachers, but if he had, it could only be that such action was rightly calculated to discourage other teachers from engaging in the same or similar conduct.

The foregoing are the facts found by the hearing officer as well as those pertinent parts which are uncontroverted in the record. We turn now to the ultimate question of fact, whether Vivian's acts as determined by the hearing officer, coupled with those facts which were not in controversy, constitute sufficient cause for discharge.

In most cases, because the statutes do not stipulate certain grounds as per se grounds for dismissal, it will be a question of fact whether the complained of acts constitute sufficient cause. *Hoagland v. Mount Vernon Sch. Dist. 320, supra.*

The hearing officer could not find

that the Respondent School District has demonstrated by a preponderance of the evidence that Petitioner's conduct will materially and substantially affect his teaching performance if he is returned to the classroom.

If such a finding, standing alone, favoring or disfavoring a teacher, precludes review by this court, then there are no cases in which the decision of a hearing officer may be reviewed no matter whether such a finding is supported by substantial evidence or in fact any evidence at all.

If the hearing officer finds as the ultimate fact that Vivian's conduct has not materially and substantially affected his performance and the evidence is not only overwhelmingly to the contrary but positively establishes that his per-

formance is affected, then as a matter of law the decision of the officer is an error of law as well as arbitrary and capricious.

█ Witnesses for Vivian concluded there was the possibility of an initial adverse impact on his effectiveness as a result of his conviction but that this would dissipate if he returned to the classroom and resumed teaching. They also said that he could overcome any belief that he condoned teenage drinking. No doubt Vivian can at some time in the future regain his ability to teach but the question is whether he could be an effective teacher on May 12, 1980, the date upon which he was dismissed. The public schools are not established for retraining unqualified teachers, and Coupeville was entitled to a teacher who would be an effective role model and teacher on the date of his discharge, not the following day, or the following month or the following year. The year following Vivian's discharge was a critical year for the students then in school and the entire community. It would be of small benefit to those students to retain Vivian during that year even though in subsequent years he might again become an effective teacher.

We conclude that if all factors are considered, including Vivian's misconduct and its impact on his teaching ability, the School District conclusively established both the misconduct and its material and substantial effect upon his future performance. The decision of the hearing officer was arbitrary and capricious and an error of law.

Judgment affirmed.

CALLOW and ANDERSEN, JJ., concur.

Review denied by Supreme Court May 25, 1984.