[No. 12887–6–I.   Division One.   February 24, 1986.]

KSLW, *Appellant*, v. THE CITY OF RENTON, ET AL, *Respondents*.

*Robert J. Backstein,* for appellant.

*Lawrence J. Warren, City Attorney,* for respondents.

SCHOLFIELD, A.C.J.—KSLW appeals both from the dismissal of its writ directing the City of Renton to renew its building permit and from the dismissal of its alternative action against the City for damages allegedly the result of an illegal downzone.

We hold that KSLW's appeal from the City's revocation of its permit must be dismissed for failure of the appellant to exhaust its administrative remedies. We affirm the trial court's dismissal of KSLW's damage claim for lack of standing.

## FACTS

The property, which is the subject of this lawsuit, was originally owned by Lakeview Towers Associates. Lakeview obtained a permit from the City of Renton in July 1979 to construct an 86–unit condominium on the site (hereinafter the Lakeview project). Citizen reaction to the Lakeview project prompted a public hearing that resulted in a downzone to single–family use of the entire area that included the subject property. Because of its building permit, Lakeview's right to build the 86–unit project, however, was vested under the prior multi–family zoning. Consequently,

no one appeared at the public hearing on behalf of Lakeview to contest the downzone, and no appeal was taken from the final rezone of the area which, but for the building permit, would have reduced the development permissible . on the Lakeview property from 86 to 10 units.

The appellant, KSLW, purchased the Lakeview project in October of 1980, after only minor progress had been made on construction. Relying upon the seller's assurances that the condominiums could be completed under the existing building permit, KSLW did not check the current zoning status of the property, and at that time was unaware of the downzone. Prior to the purchase, however, the city building director, Ronald Nelson, told KSLW that "substantial work" under the building permit would be required to keep it in force. On the strength of a bank's oral financing commitment, during October and November of 1980 KSLW made excavations and poured concrete foundation footings on the site, at a cost to it of over $142,000. The City then agreed to extend the building permit for an additional year beginning January 1981 on the condition that work commence within 120 days from that date.[1]

Unfortunately, before KSLW could finalize its bank loan, the bank so changed the terms of its oral commitment that KSLW was forced to reject the loan as uneconomical. Thereafter, KSLW diligently sought alternative financing, but without success. Consequently, no further construction was performed on the project and the building permit was in danger of being revoked by the City for failure to prosecute construction. On June 19, 1981, Nelson wrote to KSLW that due to the "tight money market" the City

---

[1]Under section 302(d) of the Uniform Building Code (1976), a building permit expires unless work is commenced within 120 days, or if work is subsequently suspended or abandoned for the same period of time. Thereafter, work can only be recommenced if a new permit is obtained, "provided . . . such suspension or abandonment has not exceeded one year."

would extend the permit for an additional 180 days.[2] Nelson also said that "[w]e will be unable to extend the permit again and we will not accept minor work on the project site as substantial construction." Nevertheless, although KSLW continued to actively seek economical financing, it performed no permanent construction on the project during the entire year of 1981.

On December 31, 1981, just prior to the building permit's January 6, 1982 expiration date, KSLW sent an informal request to the City by letter asking for either a new permit or renewal of its existing permit. KSLW conditioned its request, however, upon the City's continued application of the prior multi–family zoning. The city building director responded by letter on January 6, 1982 that the June 19, 1981 notification was KSLW's final extension and that its permit had expired. KSLW made a timely appeal of this determination to the city hearing examiner, but this appeal was never pursued. Subsequently, KSLW filed suit in superior court to compel the City to either reissue the permit or respond in damages for what KSLW claimed was an illegal downzone of the property in 1979.

The City denied KSLW's assertion that the administrative appeal was abandoned by "mutual agreement" of the parties. In any event, the trial court concluded that KSLW's building permit had expired and with it KSLW had lost its rights under the prior zoning code. The court also held that KSLW had no standing to challenge the 1979 downzone.

---

[2]While it is not clear from the record, apparently the City applied the following new provision in the Uniform Building Code (1979 edition), which it adopted in May 1981, to this situation:

"Any permittee holding an unexpired permit may apply for an extension of the time within which he may commence work under that permit when he is unable to commence work within the time required by this section for good and satisfactory reasons. The building official may extend the time for action by the permittee for a period not exceeding 180 days . . . No permit shall be extended more than once. . . ." Uniform Building Code § 303(d).

EXHAUSTION OF ADMINISTRATIVE REMEDIES

The doctrine of exhaustion of administrative remedies is well established in Washington. *South Hollywood Hills Citizens Ass'n v. King Cy.,* 101 Wn.2d 68, 677 P.2d 114 (1984). Generally, the doctrine provides that the courts may not intervene in a case where an adequate administrative remedy has not first been pursued. *Wright v. Woodard,* 83 Wn.2d 378, 518 P.2d 718 (1974); *Sunny Brook Farms v. Omdahl,* 42 Wn.2d 788, 793, 259 P.2d 383 (1953).

Various rationales support this rule. As a practical matter the judiciary should give deference to agency expertise in areas outside the conventional experience of judges. *Retail Store Employees, Local 1001 v. Washington Surveying & Rating Bur.,* 87 Wn.2d 887, 906, 558 P.2d 215 (1976). The exhaustion doctrine also (1) ensures against premature interruption of the administrative process; (2) allows the agency to develop the necessary factual background upon which to base a decision; (3) provides for a more efficient process; and (4) protects the administrative agency's autonomy by allowing it to correct its own errors, thus ensuring that individuals are not encouraged to ignore its procedures by resorting to the courts. *McKart v. United States,* 395 U.S. 185, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969).

However, exceptions to the exhaustion requirement are recognized where these policies are outweighed by considerations of fairness and practicality. *South Hollywood Hills Citizens Ass'n v. King Cy., supra* at 74. For example, a party will not be required to exhaust administrative remedies where resort to the administrative procedures would be futile. *Zylstra v. Piva,* 85 Wn.2d 743, 539 P.2d 823 (1975); *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985).

The Renton Municipal Code, which was in effect in January 1982, provides for appeals to the hearing examiner from administrative determinations of the City's land use regulation codes. Renton Municipal Code 4–3010(A)(8). Although KSLW filed a timely appeal with the hearing examiner, this administrative process was apparently aban-

doned in favor of a suit in superior court. KSLW does not maintain that an administrative appeal was futile. Even if it had, the *Orion* court made it clear that the "futility" exception to the exhaustion doctrine is only applicable in rare factual circumstances, *Orion,* at 458, which we find do not exist in this case. Instead, KSLW alleges that the hearing examiner refused to act on the appeal, referring the matter to the city attorney's office, and at trial KSLW maintained that the parties had agreed that a court should resolve their dispute. KSLW asks rhetorically, "What more could the appellant have done to exhaust their [*sic*] administrative remedies?" Reply Brief of Appellant, at 13.

With but a few narrow exceptions, the exhaustion doctrine requires that parties aggrieved by administrative decisions utilize administrative appeal processes, if possible, to settle disputes before resorting to the courts. This requirement places the burden on the appellant, not the agency, to perfect the administrative appeal, although the agency must comply with any statutory directives to process appeals once they are made. If the agency refuses to act on an appeal properly before it, the appellant may seek a writ of mandamus to compel agency action. RCW 7.16-.160; *Coughlin v. Seattle Sch. Dist. 1,* 27 Wn. App. 888, 892, 621 P.2d 183 (1980).

In the instant case, when an appeal has been made from an administrative determination of the City's land use regulation code, the Renton Municipal Code directs the hearing examiner to conduct public hearings and make a decision based thereon. Renton Municipal Code 4–3010(A) (1982). Thus, KSLW had the right to demand that the hearing examiner act on its appeal and the right to compel that action by writ of mandamus, if necessary. By choosing not to do so, KSLW failed to exhaust its administrative remedies, and the trial court could not intervene in the case. Even if the parties could have mutually agreed to forgo the administrative process, the City denies any such agreement. Moreover, there is no evidence that a binding stipulation to that effect was entered into. *See* RCW 2.44-

.010(1); CR 2A.

Nevertheless, our decision does not rest solely upon this ground. Even if, arguendo, this matter was properly before the trial court, we affirm the court's disposition on the merits.

STATUTORY CONSTRUCTION

A party has a vested right to develop property in accordance with zoning ordinances in effect at the time a building permit is applied for, if that permit is thereafter issued. *Eastlake Comm'ty Coun. v. Roanoke Assocs.,* 82 Wn.2d 475, 480–81, 513 P.2d 36, 76 A.L.R.3d 360 (1973). Consequently, KSLW continued to have the right, despite the downzone, to develop the Lakeview project, so long as their building permit remained in force. It follows that the terms of that permit are governed by the 1976 building code under which the permit was issued.[3]

Under the 1976 Uniform Building Code § 302(d), after work has been suspended or abandoned for a period of 120 days, it can be recommenced only after a "new permit" is obtained "provided . . . that such suspension or abandonment has not exceeded one year." An ordinance should be construed to avoid strained, unreasonable, or illogical results. *Stegriy v. King Cy. Bd. of Appeals,* 39 Wn. App. 346, 693 P.2d 183 (1984). Moreover, when a statute is ambiguous, the construction placed upon it by the administrative agency, while not binding on the courts, is entitled to considerable weight in determining the intention of the Legislature. *State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 371, 274 P.2d 852 (1954). In light of these principles, we find the agency's interpretation of this section of the building code to be logically compelling. That is, after work under a permit has been suspended or abandoned in excess of 1 year, the City is without authority under the statute to

[3] An issue was created whether the 1976 or the 1979 code should apply here, when the City apparently decided in June 1981 to grant KSLW a 180-day extension under the 1979 code, although KSLW's permit was issued under the 1976 building code. See footnote 2.

renew a permit; rather, the permittee must resubmit a new application for a new permit. Consequently, any vested rights under the expired permit would then be lost, and the current zoning code would apply to the new permit application.

We are left to decide then, whether KSLW had suspended or abandoned "work" on the Lakeview project. The question is whether KSLW's efforts to obtain financing to complete the project satisfied the "work" requirement as that term is used in the building code. We hold that those efforts do not constitute "work" in this context.

■ As a general rule, absent an ambiguity or a statutory definition, words in a statute should be given their ordinary meaning. *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 550 P.2d 7 (1976); *State v. Theilken*, 102 Wn.2d 271, 684 P.2d 709 (1984). However, where a word has no fixed, ordinary meaning, the court must consider the subject matter, the context in which the word is used, and the purpose of the statute. *State v. Henderson*, 34 Wn. App. 865, 664 P.2d 1291 (1983).

■ The word "work" has no fixed, ordinary meaning, but rather can mean a variety of things in a variety of contexts. In the case at bar, the word is found in the context of a building permit statute. Specifically, the statute refers to "work authorized by such permit" and "plans and specifications for such work". Uniform Building Code § 302(d) (1976). The City's point is well taken that no permit is required to obtain construction financing, nor, we might add, are plans and specifications necessary for such activity. Although financing may be an integral part of the construction process, we find that the "work" necessary to obtain financing does not fall within the ambit of this statute. From the context within which it appears here, the word "work" takes the meaning of construction or like activity performed under a building permit.

Without the limitation upon the period of time for which work can be suspended or abandoned, KSLW could leave the building site excavated and only partially constructed

indefinitely, creating a safety hazard as well as an eyesore. KSLW argues that the City should take into consideration, however, its investment in the project and its present inability to obtain economical financing to complete construction. Yet, as a result of the intervening changes in economic conditions, KSLW may never be able to obtain financing that will make the project, as originally conceived, profitable. Moreover, it would be impractical to expect the City to monitor a builder's activities in obtaining financing, versus actual construction on the building project.

In summary, under the Renton Building Code, construction work is required to validate a permit, and when no construction is performed under a permit for more than 1 year, it cannot be renewed. Consequently, after KSLW failed to perform any permanent construction on the Lakeview project for more than 1 year, the City was without authority to renew its permit, and all vested rights under the prior zoning were lost.

### STANDING

The trial court was correct in holding that KSLW has no standing to challenge the 1979 rezone of the subject property. In reviewing the action of an administrative body by writ of review, a trial court is acting in an appellate capacity, and has only such jurisdiction as is conferred by law. *Deschenes v. King Cy.,* 83 Wn.2d 714, 716, 521 P.2d 1181 (1974). Timely notice of appeal is required, therefore, to confer appellate jurisdiction on the court. *Deschenes,* at 716. When a municipal ordinance provides a definite time within which review must be taken, compliance with that time limit is essential for the court to acquire jurisdiction. *Deschenes,* at 716. A court lacking jurisdiction of any matter may do nothing other than enter an order of dismissal. *Deschenes,* at 716 (citing 21 C.J.S. *Courts* § 118 (1940)). Specific provisions limiting the time within which an aggrieved party may perfect an appeal are included on the assumption that the public interest will best be served by finalizing administrative decisions, thus firming–up the

rights of landowners. 3 R. Anderson, *Zoning* § 21.15 (1968).

The fact is undisputed that neither KSLW nor its predecessor in interest, Lakeview Towers Associates, challenged the 1979 downzone either at the public hearing or by writ of review. Because of the building permit, Lakeview had no incentive to do so, and KSLW, as subsequent owner, had no opportunity to do so. Nevertheless, the downzone was an accomplished fact when KSLW purchased the property, and KSLW cites no authority to this court that would confer standing upon it to challenge an administrative action that is now 6 years old.

The appellant also argues that this case was improperly disposed of by the trial court on summary judgment. We disagree. Rather than relying entirely upon the pleadings and affidavits of the parties, the trial court heard testimony and entered findings of fact and conclusions of law. Moreover, what KSLW maintains are unresolved factual issues are actually questions of law that we have resolved in the foregoing opinion.

Judgment affirmed.

WEBSTER, J., and PETRIE, J. Pro Tem., concur.