[No. 61752-4-I.  Division One.  January 25, 2010.]

FEDERAL WAY SCHOOL DISTRICT NO. 210, *Appellant*, v. DAVID VINSON, *Respondent*.

222

*Jeffrey Ganson* and *Rachel E. Miller* (of *Dionne & Rorick*), for appellant.

*Tyler K. Firkins* (of *Van Siclen, Stocks & Firkins*), for respondent.

¶1 APPELWICK, J. — This case arises from a notice of probable cause for discharge issued to Vinson, a teacher, by the Federal Way School District. The notice was based on alleged harassment of and retaliation against a former student, and dishonesty during the investigation of those allegations. Vinson filed an administrative appeal, during which he admitted he lied in the course of the investigation. A hearing officer found that Vinson's misconduct, while improper, was not sufficient cause for termination. The District then sought review via a statutory writ of review, pursuant to RCW 7.16.040. The superior court denied the writ and affirmed the hearing officer. The District filed a notice of appeal of the court's decision.

¶2 Dishonesty by a certified teacher during the course of an official school district investigation lacks any professional purpose as a matter of law and is sufficient cause for termination. The superior court abused its discretion in denying the writ. We reverse the trial court's denial of the writ and vacate the order affirming the hearing officer and awarding attorney fees. We remand with direction to the superior court to enter an order reversing the decision of the hearing officer.

## FACTS[1]

¶3 On May 1, 2007, David Vinson, a teacher at Federal Way High School, encountered Rebecca Nistrian, a former student, at Taco Time in Federal Way.[2] Nistrian's and Vinson's accounts of the Taco Time encounter differ. Vinson claims that Nistrian approached him, asking, "Hey, Mr. V., why aren't you at TJ [Thomas Jefferson High School] anymore?" to which Vinson responded, "Don't talk to me ever again, you fucking bitch." Nistrian then told him to "fuck off," and Vinson responded by calling her a "bitch" and a "whore."

¶4 Nistrian claims that she said "[h]i" to Vinson, at which point he called her names including "slut," "tramp," "whore," "bitch," and "hussy." Nistrian also alleges that Vinson threatened to come to her place of business, Red Lobster, and be a difficult customer. Nistrian had previously called Vinson, who is openly gay, a "faggot."

¶5 Nistrian reported the Taco Time incident to the executive director of human resources for the Federal Way School District (District), who assigned investigation of the claim to Courtney Wood. Wood had been the investigator on Christopher Kraght's harassment complaint against Vinson in 2005, as well as on Vinson's harassment complaint against George Ilgenfritz and Kraght. On May 22, 2007, Wood began interviewing Vinson, whereupon Vinson told Wood that he did not feel the investigation could be impartial, and that he felt bullied by Wood. The investigation continued nevertheless. Both

---

[1] The District does not challenge the hearing officer's findings. The fact summary is based on those unchallenged factual findings. *See, e.g., Weems v. N. Franklin Sch. Dist.*, 109 Wn. App. 767, 776, 37 P.3d 354 (2002) (unchallenged findings are verities on appeal).

[2] Nistrian had participated in an investigation regarding a harassment complaint filed against Vinson by Christopher Kraght, another teacher, in 2005. As a disciplinary measure, Mr. Vinson was transferred from Thomas Jefferson High School to Federal Way High School. Just before the harassment complaint against Vinson, Vinson had filed a sexual and malicious harassment complaint against George Ilgenfritz, then the principal of Thomas Jefferson High School, and Kraght. Vinson's claim was not upheld.

Vinson and Nistrian ultimately admitted to lying during the course of the investigation by Wood.

¶6 On July 5, 2007, the District issued to Vinson a letter of probable cause for discharge from employment pursuant to RCW 28A.405.300.[3] In the letter, the District stated that its investigation provided probable cause for termination, based on (1) retaliation and harassment against Nistrian for participation in the 2005 harassment claim investigation and (2) dishonesty during the course of investigation into the Taco Time incident.[4]

¶7 Vinson requested a hearing pursuant to RCW 28A-.405.310 to contest his termination. The hearing took place before Hearing Officer John Cooper on November 27 and 28, 2007.

¶8 The hearing officer found that Vinson had lied in his initial responses to Wood's questions about the incident, which Wood had framed as events occurring on May 2, 2007, when Vinson knew they had taken place on May 1. Instead of correcting Wood on the date, Vinson answered "no" to these questions. The hearing officer also found that Vinson had continued to deny knowledge even when Wood changed the questions such that they required a "frank admission." The hearing officer entered a specific finding that "Mr. Vinson admits that he had lied in response to certain questions posed to him by Mr. Wood during the course of the investigation." However, the hearing officer found that Vinson presented plausible reasons for his lack of candor, not least of which was his perception that the investigation by Wood was not impartial.

¶9 The hearing officer found Nistrian's testimony "to be lacking in credibility," as several witnesses testified that

---

[3] According to RCW 28A.405.300, if "it is determined that there is probable cause or causes for a teacher . . . holding a position as such with the school district . . . to be discharged . . . , such employee shall be notified in writing of that decision, which notification shall specify the probable cause or causes for such action."

[4] A third basis stated in the letter was Vinson's insubordination by reason of contacting two colleagues, by phone and e-mail, during the course of the investigation. The parties do not discuss this issue in the briefing.

she is a known liar, and she admitted during the investigation that she had lied about seeking an antiharassment order against Vinson.

¶10 Although the hearing officer commented on the impropriety of Vinson's conduct—that it was "troubling and should never have occurred"—the hearing officer concluded that the District had failed to demonstrate by a preponderance of the evidence that probable cause existed for termination of Vinson's employment. The hearing officer also found that the conduct cited in the termination letter did not and would not have an adverse impact upon his teaching effectiveness or performance. Therefore the conduct did not violate RCW 28A.405.300.

¶11 The District sought a writ of review pursuant to RCW 7.16.040 in King County Superior Court.[5] The court found that the District had failed to meet the requirements for a grant of statutory certiorari and denied the writ, affirming the decision of the hearing officer. It ordered the District to pay Vinson's attorney fees, incurred in the underlying hearing, in the amount of $38,773.67.

¶12 The District appealed the trial court's order and judgment denying the writ and affirming the decision of the hearing officer. After submitting his briefing, Vinson withdrew his request for reinstatement, waived the award of attorney fees, and asked this court to dismiss the appeal as moot. A commissioner ruled that the issue of mootness was to be argued at the hearing on the merits.

¶13 Following oral argument, we issued an opinion stating that because the parties had settled, the case was moot, so the court no longer had jurisdiction. However, the District's motion for reconsideration correctly noted that the parties had not settled. Rather, Vinson had unilaterally withdrawn his request for reinstatement and waived his

---

[5] Only employees, and not the District, have a right to appeal the hearing officer's decision under RCW 28A.405.320. See, e.g., Hall v. Seattle Sch. Dist. No. 1, 66 Wn. App. 308, 310, 317, 831 P.2d 1128 (1992); Coupeville Sch. Dist. No. 204 v. Vivian, 36 Wn. App. 728, 730, 677 P.2d 192 (1984).

right to attorney fees. We granted the motion for reconsideration and withdrew our original opinion.

## DISCUSSION

¶14 The basis for granting the statutory writ is established in RCW 7.16.040:

"A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

*Commanda v. Cary*, 143 Wn.2d 651, 655, 23 P.3d 1086 (2001). The superior court's decision to issue a writ is reviewed for an abuse of discretion. *See id.* at 654-57. Issues of law are reviewed de novo to determine whether the decision below was contrary to law. RCW 7.16.120(3); *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995). Issues of fact are reviewed to determine whether they are supported by competent and substantial evidence. RCW 7.16.120(4); *Sunderland*, 127 Wn.2d at 788.

¶15 The District asked the court to determine whether, under RCW 7.16.120(3),[6] the hearing officer had erred as a matter of law on the issue of sufficient cause, prejudicing the District. If the District succeeded on the merits, the trial court could have provided relief by reversing the hearing officer's decisions on sufficient cause and reinstatement. However, the trial court denied the writ, finding that

---

[6] RCW 7.16.120, the statutory writ of review, provides, inter alia:

The questions involving the merits to be determined by the court upon the hearing are:

. . . .

(3) Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator.

the District had failed to meet the requirements of the writ. The trial court affirmed the decision of the hearing officer and awarded attorney fees to Vinson.[7]

## I. Sufficient Cause

¶16 The District asserts that the hearing officer erred as a matter of law by concluding that Vinson's dishonesty during investigation did not constitute sufficient cause for discharge. The petition alleged, inter alia, that Vinson lied in the course of the investigation of the alleged misconduct; that lying provided sufficient cause to terminate under RCW 28A.405.300 and *Clarke v. Shoreline School District No. 412*, 106 Wn.2d 102, 113-14, 720 P.2d 793 (1986); that the hearing officer acted unlawfully in holding that Vinson's dishonesty did not establish sufficient cause; and that it had no right to appeal under RCW 28A.405.320 and *Coupeville School District No. 204 v. Vivian*, 36 Wn. App. 728, 730, 677 P.2d 192 (1984).

¶17 Vinson does not dispute the District lacked a right of appeal under the statute. Hence, the sole question in determining whether the trial court abused its discretion by denying the writ is whether the hearing officer erred as a matter of law on sufficient cause.[8] *Sunderland*, 127 Wn.2d at 788.

¶18 In determining whether sufficient cause for discharge exists, the inquiry centers on whether the teacher has materially breached his promise to teach so as to excuse the school district in its promise to employ. *Barnes v. Seattle Sch. Dist. No. 1*, 88 Wn.2d 483, 487, 563 P.2d 199 (1977).

---

[7] This decision became a final judgment and was appealed pursuant to RCW 7.16.350 and RAP 2.2(a)(1) ("The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs."). RAP 2.1(b) provides, "The procedure for seeking review of trial court decisions established by these rules supersedes the review procedure formerly available by extraordinary writs of . . . certiorari." Therefore, our jurisdiction to hear the case falls under RAP 2.1(a)(1), review as a matter of right.

[8] The District does not request that we determine other questions under RCW 7.16.120.

Specifically, sufficient cause for a teacher's discharge exists as a matter of law where the teacher's deficiency is unremediable and materially and substantially affects the teacher's performance, *or* lacks any positive educational aspect or legitimate professional purpose. *Clarke*, 106 Wn.2d at 113-14; *Weems v. N. Franklin Sch. Dist.*, 109 Wn. App. 767, 776, 37 P.3d 354 (2002); *Sauter v. Mt. Vernon Sch. Dist. No. 320*, 58 Wn. App. 121, 130-31, 791 P.2d 549 (1990) (examining the *Clarke* rule and determining that the *Clarke* court did not intend that remediability apply to both of *Clarke*'s tests for sufficient cause). Remediability applies only to a deficiency that materially and substantially affects the teacher's performance, not if the conduct lacks any positive educational aspect or legitimate professional purpose. *Sauter*, 58 Wn. App. at 130-31.

¶19 In *Hoagland v. Mount Vernon School District No. 320*, 95 Wn.2d 424, 429-30, 623 P.2d 1156 (1981), the Washington Supreme Court enunciated eight factors for consideration in teacher discharge cases. The *Hoagland* factors are relevant to any determination of teaching effectiveness, because teaching effectiveness " 'is the touchstone for all dismissals.' " *Clarke*, 106 Wn.2d at 114 (quoting *Hoagland*, 95 Wn.2d at 429-30). In determining whether a teacher's conduct substantially undermines his effectiveness, thereby justifying discharge, a court must consider the propriety of the dismissal in light of

> (1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the rights of the teachers.

*Hoagland*, 95 Wn.2d at 429-30. Not all eight factors will be applicable in every teacher discharge case. *Clarke*, 106 Wn.2d at 114. The factors were designed to ensure that if a teacher's conduct *outside* his profession is the basis for his

dismissal, the conduct has some nexus to his performance of his duties as a teacher. *Hoagland,* 95 Wn.2d at 428. Nevertheless, these factors may be helpful in determining whether a teacher's effectiveness is impaired by his classroom deficiencies. *Clarke,* 106 Wn.2d at 114-15. The interplay of the two *Clarke* tests and the *Hoagland* factors is as follows:

> When the cause for dismissal is based on the employee's job performance, either one or both of the *Clarke* tests may apply. But application of these tests may or may not require consideration of some or all of the *Hoagland* factors. In contrast, when . . . a[n] employee's status or conduct outside his or her job duties is the basis for discharge, the *Hoagland* factors must be considered along with the second *Clarke* test.

*Ruchert v. Freeman Sch. Dist.,* 106 Wn. App. 203, 213, 22 P.3d 841 (2001).

■ ¶20 Because the misconduct here took place at work, on work time, and in violation of his duties as a district employee to cooperate with the investigation of other alleged misconduct, the admitted dishonesty during the investigation does not require the application of the *Hoagland* factors. Notwithstanding Vinson's concern with the investigation's impartiality, which may or may not have been founded, Vinson's choice to lie during the course of an official investigation was improper. We hold that, under the second *Clarke* test, lying during the course of an official investigation of professional misconduct lacks any professional purpose and is sufficient cause for termination as a matter of law.[9]

---

[9] The District asserts that *any* dishonesty is sufficient grounds for discharge under *Weems* as a matter of law. We decline to reach such a broad holding.

In *Weems,* Dr. Weems created and falsified documents in order to feign compliance with special education regulations. 109 Wn. App. at 777. The issue presented was whether Weems's conduct was adequate grounds for termination, because the conduct lacked any positive educational aspect or legitimate professional purpose (the second *Clarke* test). *Id.* at 770. The court upheld the hearing officer's conclusion that falsification of documents served no educational or legitimate professional purpose and was therefore sufficient cause to discharge. *Id.* The court did go on to say that "[i]t [the conduct] was dishonest. And there is no

¶21 Therefore, the hearing officer's decision contained an error of law on sufficient cause. The trial court abused its discretion by denying the writ. Further, it had no authority to award attorney fees.[10] Finally, it lacked authority to affirm the hearing officer by virtue of its denial of the writ.[11] Because the error of law is dispositive of the appeal, there is no need to remand.

¶22 We reverse the trial court's denial of the writ and vacate the order affirming the hearing officer and awarding attorney fees. We remand with direction to the superior court to enter an order reversing the decision of the hearing officer.

## II. Mootness

¶23 This case was not moot when the trial court denied the writ. After the parties had submitted their briefing on

reason for dishonesty in any workplace." *Id.* at 777. The District argues that this last sentence is part of the court's holding and therefore stands for the proposition that dishonesty and lying to one's employer is grounds for discharge as a matter of law—that there is never justification for dishonesty by a teacher to his employer. Vinson responds that this language is dicta.

*Weems*'s holding is not as broad as the District would have it. The court arrived at the holding in Weems from an application of the second *Clarke* test. *Id.* at 776-77. The legal conclusion of the hearing officer, which became the holding of the *Weems* court, was that the teacher's falsification of documents in order to feign compliance with state and federal special education regulations served no educational or legitimate professional purpose and therefore was sufficient grounds for discharge. *Id.* at 777. *Weems* was not creating a new test that would supplant the well-established *Clarke* test. The *Clarke* test already allows a hearing officer to find that, as a matter of law, dishonest conduct lacks any positive educational aspect or legitimate professional purpose. While we hold that lying during the course of the investigation is sufficient cause for termination, our holding stems from the application of the *Clarke* test to the facts before us.

Further, to read *Weems* as the District suggests would eviscerate the line of cases since *Hoagland* and *Clarke*, which ensure that the circumstances of a teacher's conduct may be taken into consideration when a district seeks discharge.

[10] The trial court may award attorney fees in an appeal by a teacher under RCW 28A.405.350. Title 28A RCW contains no such provision for the District to appeal. Here, the District sought a writ of review under chapter 7.16 RCW, which does not provide for attorney fees for the prevailing party.

[11] When a superior court acts in an appellate capacity in a statutory writ proceeding, it has only such jurisdiction as is conferred by law. *Deschenes v. King County*, 83 Wn.2d 714, 716, 521 P.2d 1181 (1974); *KSLW v. City of Renton*, 47 Wn. App. 587, 595, 736 P.2d 664 (1986). If a court lacks jurisdiction over a writ proceeding, it "may do nothing other than enter an order of dismissal." *Deschenes*, 83 Wn.2d at 716.

appeal, Vinson withdrew his request for reinstatement, waived the award of attorney fees, and asked this court to dismiss the appeal as moot. However, Vinson has not stipulated that there was sufficient cause for his termination. Nor did the parties agree to vacate the entire action.

¶24 The District argues that the case is not moot, because it is still bound by the hearing officer's determination that it lacked sufficient cause to terminate Vinson and because Vinson has filed a separate lawsuit for damages, relying upon the decision of the hearing officer as the basis for his wrongful termination claim. Vinson has admitted he filed such an action. The District argues that the "prejudice suffered . . . as a result of the [h]earing [o]fficer's erroneous decision will continue, in the form of the District being required to defend an action based on that decision."

■ ¶25 "A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). We agree with the District that the case is not moot; we are still in a position to award relief to the District.[12] The hearing officer's decision that the District lacked sufficient cause to discharge under *Clarke* was wrong as a matter of law. Vinson's waiver of reinstatement and award of attorney fees relieved the District of two immediate consequences of the hearing officer's erroneous decision, but not of the erroneous decision itself or of any other collateral consequences that flow from it.

■ ¶26 A judgment or administrative order becomes final for preclusion purposes at the beginning, not the end, of the appellate process, although res judicata or collateral estoppel can still be defeated by later rulings on appeal. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 264, 956 P.2d 312 (1998); *Lejeune v. Clallam County*, 64 Wn. App. 257, 265-66, 823 P.2d 1144 (1992). The District now

---

[12] Further, whereas the District's satisfaction of the requirements of the writ under RCW 7.16.040 is jurisdictional for the trial court, it is not for us. RCW 7.16.350.

faces the possibility of collateral estoppel[13] on the sufficient cause issue in Vinson's separate wrongful termination action against the District. It is also possible the determination would have collateral consequences in subsequent discharge actions of other employees of the District or otherwise.

¶27 The District argues that even if the case is moot we should apply the doctrine of equitable vacatur to the hearing officer's decision to avoid any collateral consequences of the unreviewed decision, or we should reach the merits under the *Westerman* public interest exception. *Westerman v. Cary*, 125 Wn.2d 277, 892 P.2d 1067 (1994).

¶28 Were we to accept Vinson's contention that the case is moot, we are persuaded this is an appropriate case to invoke the doctrine of equitable vacatur. A court may apply the doctrine of equitable vacatur where judgments have become moot but may nonetheless have preclusive effect. *See Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007) (vacating trial court's judgment in moot case " 'is commonly utilized . . . to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences' " (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41, 71 S. Ct. 104, 95 L. Ed. 36 (1950))). In Washington, a judgment in a case that has subsequently become moot may be preclusive if left of record. *See Nielson*, 135 Wn.2d at 263-64; *cf. Sutton v. Hirvonen*, 113 Wn.2d 1, 9-10, 775 P.2d 448 (1989) (vacatur necessarily eliminates preclusive effect of judgment). Under this doctrine, we would vacate the hearing officer's decision.

¶29 Further, if equitable vacatur were unavailable, we would nonetheless reach the question of whether sufficient cause for discharge exists when a teacher is dishonest

---

[13] Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove (1) the issue decided in the prior adjudication is identical with the one presented in the second action, (2) the prior adjudication must have ended in a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication, and (4) application of the doctrine does not work an injustice. *Nielson*, 135 Wn.2d at 262-63.

during the course of an official school investigation under the *Westerman* public policy exception. *Westerman*, 125 Wn.2d at 286-87 (an appellate court, at its discretion, may decide an appeal that has otherwise become moot when it involves matters of continuing and substantial public interest). "The three factors considered essential" for application of the public interest exception "are: (1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). The issue is of a public nature and may very well recur, and its resolution will assist school districts and hearing officers in termination cases.

¶30 We hold that dishonesty by a certified teacher during the course of an official school district investigation lacks any professional purpose as a matter of law, and is therefore sufficient cause for termination under *Clarke*. The superior court abused its discretion in denying the District's writ.

¶31 We reverse the trial court's denial of the writ and vacate the order affirming the hearing officer and awarding attorney fees to Vinson. We remand with direction to the superior court to enter an order reversing the decision of the hearing officer.

LEACH, J., concurs.

¶32 DWYER, A.C.J. (dissenting) — The majority opinion understandably relies on the decision in *Kelso School District No. 453 v. Howell*, 27 Wn. App. 698, 621 P.2d 162 (1980), for the proposition that the Federal Way School District is entitled to seek judicial review of the administrative decision herein by means of a statutory writ of

review. Because I believe the *Kelso*[14] case to have been wrongly decided, because the majority logically applies the *Kelso* decision so as to reach an unfair and absurd result as to a teacher's entitlement to an award of attorney fees in disputes of this type, and because all of this arises in the context of a moot case, I dissent.

I

¶33 Precedent of this court should be overruled only when it is both incorrect and harmful. *State v. Stalker*, 152 Wn. App. 805, 811-12, 219 P.3d 722 (2009). This test is met with regard to the *Kelso* decision.

¶34 School districts are inventions of the legislature. As stated several decades ago by our Supreme Court:

> School districts are municipal or quasi-municipal corporations. They are created by the legislature and can exercise only such powers as the legislature has granted in express words, or those necessary or fairly implied in, or incident to, powers expressly granted or those essential to the declared objects and purposes of such district.

*Noe v. Edmonds Sch. Dist. No. 15*, 83 Wn.2d 97, 103, 515 P.2d 977 (1973) (citations omitted). As the majority opinion readily admits, the legislature has specifically allowed a teacher to seek judicial review of a hearing officer's decision in a dispute of this type while simultaneously declining to authorize a school district to do so. RCW 28A.405.320. Unquestionably, the legislature's will was that school districts not have the right to seek review in superior court in cases of this type.

¶35 Notwithstanding this clear legislative policy decision, the *Kelso* court held that school districts could seek judicial relief by means of a statutory writ of certiorari. *Kelso*, 27 Wn. App. at 701. In so holding, the court focused

---

[14] The *Kelso* decision was followed (without discussion) in *Coupeville School District No. 204 v. Vivian*, 36 Wn. App. 728, 677 P.2d 192 (1984), cited by the majority. Majority at 226 n.5.

solely on the nature of the underlying administrative proceeding, which it noted was "quasi-judicial in nature," *Kelso*, 27 Wn. App. at 701, but did not analyze the question in light of the nature of the party seeking review. Simply put, the *Kelso* court did not confront the true issue presented: was granting a right to judicial review to the school district, in the face of a plain, clear legislative determination to the contrary, an improper affront to the powers and prerogatives of the legislature?

¶36 This was most unfortunate because clear Supreme Court precedent leading to a contrary conclusion had long been extant at the time of the *Kelso* decision.

¶37 In *State ex rel. Bates v. Board of Industrial Insurance Appeals*, 51 Wn.2d 125, 316 P.2d 467 (1957), the Supreme Court addressed a similar situation. In that case, the Department of Labor and Industries sought judicial review of an Industrial Appeals Board decision by means of a writ of certiorari, notwithstanding a provision of the Industrial Insurance Act, Title 51 RCW, providing that the department had no right to appeal to the superior court from a decision of the board. The Supreme Court determined that review by writ was not available to the department:

> Since the legislature saw fit . . . to withhold from the department any right to appeal from the decisions of the board, it follows that, in the absence of some legislative expression indicating a contrary intention, the superior court had no jurisdiction to entertain and grant an application for certiorari which would, in effect, permit the department to do precisely what the legislature has said it may not do, to wit, obtain a review of the board's decision by the superior court.

*Bates*, 51 Wn.2d at 131.

¶38 In reaching its contrary conclusion, the Court of Appeals' decision in *Kelso* did not discuss the Supreme Court's decision in *Bates*. Similarly, no later appellate court decision relying on the authority of *Kelso* has discussed the holding in *Bates*.

¶39 The Supreme Court stated the law in *Bates* 23 years prior to the *Kelso* decision. In light of the *Bates* holding, *Kelso* was improperly decided.

II

¶40 One harmful effect of the *Kelso* decision, of course, is that it stands as an affront to the legislature. A second harmful effect also manifests itself in the majority opinion: applying *Kelso* leads to unfair, absurd results. These results, unfortunately, also stand in contravention to the legislature's will.

¶41 In discussing Vinson's request for an award of attorney fees, the majority reaches an absurd conclusion. Had Vinson *lost* at the administrative hearing and appealed pursuant to RCW 28A.405.320, he would be entitled to an award of attorney fees in the event that he prevailed on appeal. Such a result was provided for by the legislature.

¶42 In this case, however, Vinson *won* at the administrative hearing. The district—not Vinson—initiated judicial review. According to the majority opinion, under these circumstances, a prevailing teacher can *never* qualify for an award of attorney fees. *See* majority at 231 n.10. Thus, the majority concludes that the legislature's will is to allow an award of attorney fees to a teacher who loses at the administrative level but prevails in court but to *deny* such an award to a teacher who prevails *both* at the administrative level and in court. Having started with a false premise (that the legislature wants school districts to avail themselves of writs of review), the majority arrives unerringly at this absurd conclusion. The continuing harm of the wrongly decided *Kelso* decision is manifest.

III

¶43 My disaffection with the majority opinion becomes complete when I observe that this case is moot.

¶44 After the parties submitted their briefing, Vinson withdrew his request for relief. Therefore, the requirement

of RCW 7.16.120(3), that the rights of the district have been violated to its prejudice, cannot be met. There is no ongoing dispute. There is no true prejudice to the district.

¶45 The district's claim that, in other litigation, it may be collaterally estopped from defending the propriety of Vinson's discharge is unavailing. We have previously held that "[e]ven though an issue was essential to the judgment, was actually litigated, and was embodied in a valid final judgment, we will not deny a party the chance to litigate the issue if it was statutorily denied an opportunity to appeal." *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 309, 57 P.3d 300 (2002). Here, Vinson deprived the case of its controversy, rendering the district unable to obtain complete appellate review. Collateral estoppel would not apply in later litigation. The district is not prejudiced by the administrative decision. The case is moot.

IV

¶46 Because the district should not be allowed to obtain review by statutory writ, because allowing the district to do so distorts the legislature's will with regard to attorney fee awards in cases of this type, and because this case is moot, I respectfully dissent.

Review granted at 168 Wn.2d 1039 (2010).