95 Wn.2d 424 (1981)
623 P.2d 1156
CHARLES M. HOAGLAND, Respondent,
v.
MOUNT VERNON SCHOOL DISTRICT NO. 320, ET AL, Petitioners.
No. 46531.
The Supreme Court of Washington, En Banc.
February 19, 1981.
Perkins, Coie, Stone, Olsen & Williams, by Steven S. Bell and Lawrence B. Hannah, for petitioners.
Cogdill, Deno & Millikan, by W. Mitchell Cogdill, for respondent.
UTTER, J.
On March 17, 1976, the Board of Directors of the Mount Vernon School District determined that there was probable cause to discharge Charles M. Hoagland, a shop teacher in one of its schools. The grounds for discharge were that he had been convicted of grand larceny by possession for having purchased a stolen motorcycle. A notice was placed in his hands, advising him of the grounds for the contemplated discharge and that he had a right to *426 request a hearing before the board of directors to determine whether there was sufficient cause for his discharge. He was also advised that he had the statutory alternative of appealing to the Superior Court for Skagit County, and was given directions for the taking of such an appeal.[1]
Mr. Hoagland chose to appeal directly to Superior Court where he contended not only that the stated ground for dismissal did not constitute probable cause but that under the surrounding facts and circumstances, dismissal was inappropriate. Affidavits and memoranda were submitted, and the school board moved for summary judgment on the merits. At the same time, Hoagland asked for partial summary judgment and urged the court to impanel a jury and take testimony which he would offer to mitigate his culpability and to show that his conviction would not adversely affect his teaching.
The Superior Court granted the board's motion. It found that Hoagland's felony conviction was inherently harmful to the teacher-student relationship, and therefore harmful to the school district. In reviewing that ruling, the Court of Appeals held that granting the motion was improper. It concluded there was a material factual issue as to whether Hoagland's misconduct affected his fitness to teach. We agree and remand this case to Superior Court.
The statutory provisions governing teacher dismissals at the time of these proceedings were set forth in RCW 28A.58.450 through 28A.58.515. The "discharge statute," RCW 28A.58.450, provided that a school board
determin[ing] that there is probable cause or causes for a teacher ... to be discharged or otherwise adversely affected in his contract status, shall notify such employee in writing of its decision, which notification shall specify the probable cause or causes for such action.
*427 After notification, the employee, at his or her request,
shall be granted opportunity for hearing [before the school board or its designated hearing officer] to determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his contract status.... Any decision to discharge or to take other adverse action against such employee shall be based solely upon the cause or causes for discharge specified in the notice of probable cause to the employee and established by a preponderance of the evidence at the hearing to be sufficient cause ...
... in the event cause for discharge or other adverse action is not established by a preponderance of the evidence at the hearing, such employee shall not be discharged or otherwise adversely affected in his contract status for the causes stated in the original notice for the duration of his or her contract.
As an alternative procedure to the hearing before the school board, RCW 28A.58.515 provided that:

In lieu of requesting a hearing before the board of directors or its designated hearing officer pursuant to the provisions of RCW 28A.58.450 ... an employee may elect to appeal the action of the board directly to the superior court ... The superior court shall determine whether or not there was sufficient cause for the action of the board of directors and shall base its determination solely upon the cause or causes stated in the notice of the employee. The appeal provided in this section shall be conducted in the same manner as appeals provided in RCW 28A.58.470 through 28A.58.500.
(Italics ours.) Appeals were to "be heard de novo by the superior court." RCW 28A.58.480.[2]
[1] Read together, these statutes required that, at the request of the teacher, sufficient cause for dismissal be determined at a hearing before either the school board, a *428 hearing officer, or superior court.[3] The alternatives were provided to ensure access to an unbiased forum, see Francisco v. Board of Directors, 85 Wn.2d 575, 582, 537 P.2d 789 (1975), and were available regardless of the nature of the misconduct. Consequently, even if the misconduct was so egregious that the sufficient cause determination could be made as a matter of law, the teacher was (and under the present law still is) entitled to a hearing.
[2, 3] In most cases, because the statutes do not stipulate certain conduct as per se grounds for dismissal, it will be a question of fact whether the complained of acts constitute sufficient cause. See Gaylord v. Tacoma School Dist. 10, 88 Wn.2d 286, 559 P.2d 1340 (1977); Browne v. Gear, 21 Wash. 147, 57 P. 359 (1899); see also Board of Educ. v. Jack M., 19 Cal.3d 691, 566 P.2d 602, 139 Cal. Rptr. 700 (1977). Sufficient cause, though not statutorily defined, has been interpreted to mean a showing of conduct which materially and substantially affects the teacher's performance. Gaylord v. Tacoma School Dist. 10, supra; Browne v. Gear, supra; see also Fisher v. Snyder, 346 F. Supp. 396 (D. Neb. 1972). In Gaylord we rejected the argument that one's status is sufficient to support a dismissal. Without an actual showing of impairment to teaching, simply labeling an instructor as a convicted felon will not justify a discharge. See Gaylord v. Tacoma School Dist. 10, supra; Browne v. Gear, supra; Board of Educ. v. Jack M., supra. Proof of the commission of a criminal act, for example, is *429 only one of several factors in the dismissal determination. Board of Educ. v. Jack M., supra, and the cases cited therein. To permit a dismissal solely on the basis of a conviction would ignore the fact that
the teacher who committed an indiscretion, paid the penalty, and now seeks to discourage his students from committing similar acts may well be a more effective supporter of legal and moral standards than the one who has never been found to violate those standards ... Since these conditions will vary from case to case, proof that one has at some past time committed a crime should not in itself suffice to demonstrate that he is not now and never will be a suitable behavior model for his students.
Board of Educ. v. Jack M., 19 Cal.3d 691, 699 n. 4, 566 P.2d 602, 139 Cal. Rptr. 700 (1977). Moreover, it would violate due process to discharge a teacher without showing actual impairment to performance. Gaylord v. Tacoma School Dist. 10, supra at 306 (Dolliver, J., dissenting); Board of Educ. v. Jack M., supra; see Mindel v. United States Civil Serv. Comm'n, 312 F. Supp. 485 (N.D. Cal. 1970).
[4] While we have not specifically determined what factors, besides criminal conduct, are relevant to establishing sufficient cause, we have concluded that errant attorneys are to be disciplined only after a hearing in which the court considers, among other things, the seriousness and circumstances of the offense, the possibility of its repetition, and its effect on the profession. See, e.g., In re Allper, 94 Wn.2d 456, 463, 617 P.2d 982 (1980); In re Salvesen, 94 Wn.2d 73, 614 P.2d 1264 (1980). These also are some of the factors considered by other jurisdictions in teacher dismissals. Those courts determine dismissals in light of (1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the *430 rights of the teachers involved or of other teachers. Board of Educ. v. Jack M., supra; Morrison v. State Bd. of Educ., 1 Cal.3d 214, 461 P.2d 375, 82 Cal. Rptr. 175 (1969); Weissman v. Board of Educ., 190 Colo. 414, 547 P.2d 1267 (1976).
We, too, believe that a teacher should not be dismissed without a showing of the presence of these factors. They are obviously relevant to any determination of teaching effectiveness, the touchstone for all dismissals. Moreover, a consideration of them may avert an improvident dismissal and its consequences. As observed in Wojt v. Chimacum School Dist. 49, 9 Wn. App. 857, 862, 516 P.2d 1099 (1973):
Where a teacher is discharged ... the consequences are severe. Chances of other employment in the profession are diminished, if not eliminated. Much time, effort, and money has been expended by the teacher in obtaining the requisite credentials. It would be manifestly unfair to allow a discharge for a teaching or classroom deficiency which is reasonably correctable.
Likewise, it would be manifestly unfair, besides illegal, to allow a discharge for insufficient cause.
The trial court in this case, however, did not fully explore these factors. Rather, it ruled as a matter of law that respondent's conviction made him unfit to teach. While there may be situations where such a determination can be made, this case is not one.
[5] There is substantial, credible evidence in this record that respondent did not know the motorcycle was stolen when he purchased it. He paid more than its fair market value, and the period between when he should have known it was stolen and the time of his arrest was only a day and a half, during which time he was busy with the first few days of a new school term. When contacted by the police, he willingly showed them the motorcycle parts, apparently believing he had nothing to hide. Eight of the jurors who found him guilty signed affidavits that they found no evidence that he knew the motorcycle was stolen, but instead *431 convicted him upon a finding that he should have known a day and a half before his arrest.
The facts further reveal that despite being charged with the crime, he continued to teach his shop classes competently from January through March 17, 1976, during which time he received the support and encouragement of his students, their parents, and other teachers and members of his community. This support continued even after his conviction. It appears he received no adverse reaction from his students, fellow teachers, or the community; and the record contains no allegations that the facts underlying the conviction had any adverse effect on his ability or effectiveness as a teacher.
Also significant is the fact that respondent received only a deferred sentence and probation. The imposition of such a sentence indicates that the sentencing judge found significant mitigating factors in this case and that the crime was not egregious.
These facts, taken together and in light of the above identified factors, suggest that Hoagland should not be dismissed. They, at the very least, do not support a conclusion, as a matter of law, that he is unfit to teach. Rather, this record creates a genuine issue of fact as to his fitness, and thus the trial court improperly failed to conduct an evidentiary hearing. See Board of Educ. v. Jack M., supra; Morrison v. State Bd. of Educ., supra; Sarruf v. Miller, 90 Wn.2d 880, 586 P.2d 466 (1978).
Therefore, this case is remanded to Superior Court for an evidentiary hearing as to Hoagland's competency to teach.
BRACHTENBACH, C.J., and STAFFORD, DOLLIVER, and HICKS, JJ., concur.
WILLIAMS, J., concurs in the result. ROSELLINI, J. (dissenting)
I disagree with the majority, both as to the proper function of the trial court upon an appeal from a notice of determination of probable cause, and as to the sufficiency of the cause upon which the *432 respondent's proposed termination was based. The holding with respect to the first point is relatively harmless, inasmuch as the legislature has corrected the holding with respect to cases arising in the future, by its 1976 amendment to RCW 28A.58.450.[4] However, it does reflect a misunderstanding of the proper role of the courts in reviewing administrative acts, and thus warrants some discussion.
The statute prescribing the superior court's function when this action arose provided:
Any appeal to the superior court by an employee shall be heard de novo by the superior court. Such appeal shall be heard expeditiously.
RCW 28A.58.480, part; Laws of 1969, 1st Ex. Sess., ch. 34, § 15. That provision undoubtedly authorized a trial de novo where an employee appealed from a decision of a school authority, delivered after a hearing. But, as we said in Foster v. Carson School Dist. 301, 63 Wn.2d 29, 385 P.2d 367 (1963), the term de novo means afresh, anew, a second time, and there cannot be a hearing de novo if there has not been an original hearing. In that case a teacher had appealed to the court from a notice of dismissal which did not contain a statement of probable cause and did not afford him an opportunity for a hearing. RCW 28A.58.480 provided for a hearing de novo on appeal in 1963, as it did in 1976 when this action arose. There the school district proposed that the court should conduct a trial, giving the district an opportunity to prove that there was probable cause for dismissing the teacher. We rejected the contention, saying that this provision can have no effect when there has not been an original hearing. Under the holding *433 of that case, the only function of the court is to determine the adequacy of the notice and grant the relief which follows from that determination. Lewis v. Department of Motor Vehicles, 81 Wn.2d 664, 504 P.2d 298 (1972), is in accord. There we said: "A trial de novo implies an `original hearing' was held which the de novo trial is to review." Lewis, at 667. Accord, Noe v. Edmonds School Dist. 15, 83 Wn.2d 97, 515 P.2d 977 (1973); see also Department of Motor Vehicles v. Andersen, 84 Wn.2d 334, 339, 525 P.2d 739 (1974).
Since the respondent here elected to forgo a hearing before the board or a hearing officer, in which his evidence and his request for leniency could have been presented, the only administrative action before the court for review was the issuance of the notice of probable cause. The adequacy of the other notice provisions not being questioned, the only matter which the court could properly decide was whether the stated grounds constituted probable cause for dismissal.
But even assuming that a hearing before the court was proper, under RCW 28A.58.515 as it was then worded, the question remains the same: Did the notice show sufficient cause for discharge? If sufficient cause was alleged, it was the duty of the court to uphold the board's action. It is not the court's prerogative to substitute its judgment for that of the school directors, once sufficient cause has been shown, and no source cited in the majority opinion gives the court such authority. The majority simply proposes to usurp a power given by statute to the school district.
I am also of the opinion that the Superior Court's ruling was correct upon the question of sufficient cause.
In the early case of Browne v. Gear, 21 Wash. 147, 57 P. 359 (1899), this court, noting that the legislature had not defined the term "sufficient cause", held that such cause must be either such incompetency in a teacher's vocation in and about the school as makes him unfit for the station, or violation of the rules in teaching, et cetera, or such moral *434 turpitude outside his profession as would recoil on his efficiency in his work and injure the school.
The notice in this case advised the respondent that conduct on his part, which occurred in part on school premises, had resulted in a conviction of grand larceny by possession. It is established that grand larceny is a crime involving moral turpitude. In re Anderson, 73 Wn.2d 587, 439 P.2d 981 (1968); In re Wallis, 63 Wn.2d 833, 389 P.2d 421 (1964); In re Dalton, 60 Wn.2d 726, 375 P.2d 258 (1962). In all of these cases, attorneys were disbarred as a matter of course upon proof of their convictions, the court seeing no need to doubt the impact such conduct might have on the lawyer's effectiveness or upon his profession.
Most surely, where such a crime has been proved to a jury beyond a reasonable doubt, a school board is justified in concluding that its commission reflects upon the fitness of the teacher to perform his duties, which include those of helping to mold the ethical character of youngsters, both by instruction and example. If an attorney is automatically disbarred upon such a conviction, because of its adverse effect upon his fitness as an attorney and the standing of the profession, it would be arbitrary indeed for a court to declare that similar acts do not warrant the discharge of a teacher.
If this comparison is not enough to set the question at rest, one need only look to the legislative declaration upon the subject. RCW 28A.70.160, governing the revocation of authority to teach, provides that any certificate authorized under the act may be revoked upon complaint that the teacher has committed a crime against the law of the state. If proof to the satisfaction of the authority granting the certificate is adequate to justify revocation of a teacher's certificate, it must follow a fortiori that proof beyond a reasonable doubt of such a crime constitutes probable cause for dismissal from a teaching position, which is, at least in dimension, a lesser deprivation.
The majority cites Gaylord v. Tacoma School Dist. 10, 88 Wn.2d 286, 559 P.2d 1340 (1977), where we held that *435 immorality as a ground for teacher discharge would be unconstitutionally vague if not coupled with resulting actual or prospective adverse performance as a teacher. They conclude from that case that the district is obliged to aver and prove, as a separate element of the cause, that his conduct and the conviction to which it led will have a negative effect on his fitness to teach. In Gaylord, the defendant was discharged not because of any conduct on his part but because he had admitted that he was sexually attracted to men, rather than to women, and this admission had been publicized, resulting in some protests from parents. The teacher's sexual preference was characterized by the district as "immorality". It will be seen immediately that such a broad and abstract category could well include conduct or, as in that case, a state of being, which in and of itself was unlikely to have any detrimental effect on a teacher's performance. Because of this vagueness in the charge, we held that the impact of the teacher's personal sexual preferences upon his teaching performance must be affirmatively proven. Finding such proof in the record, this court upheld the teacher's discharge.
This is not the situation here. The notice to the respondent specified the conduct which gave rise to the charge against him. While the notice did not articulate the element of knowledge that the vehicle in question was stolen, such knowledge formed a part of the charge and is reflected in the verdict. There is no suggestion that the respondent was not aware that it was the primary issue in the criminal trial. He avers now that he lacked such knowledge. His suggestion is that the board must disregard the verdict, and the majority agrees. I cannot join in this cavalier denigration of the judicial process. The respondent's conviction of the crime was sustained by the trial judge and affirmed on appeal. The school board was justified in relying upon the judgment of the courts based upon the verdict, which shows that the jury was convinced beyond a reasonable doubt of all the elements of the crime.
*436 In Gaylord, in determining that the teacher's sexual preference constituted immorality, we noted that RCW 28A.70.160 makes immorality a ground for revoking a teacher's certificate, and also includes commission of a "crime against the law of the state" one of the grounds for such revocation. Gaylord had not been convicted of any crime, but the trial court had observed that commission of homosexual acts was, at that time, illegal. "The moral conduct of a teacher", this court said, "is relevant to a consideration of that person's fitness or ability to function adequately as a teacher of the students he is expected to teach ..." Gaylord, at 290.
In speaking of the impact which public knowledge of a teacher's immorality will be likely to have upon his teaching performance, this court said:
It is important to remember that Gaylord's homosexual conduct must be considered in the context of his position of teaching high school students. Such students could treat the retention of the high school teacher by the school board as indicating adult approval of his homosexuality. It would be unreasonable to assume as a matter of law a teacher's ability to perform as a teacher required to teach principles of morality (RCW 28A.67.110) is not impaired and creates no danger of encouraging expression of approval and of imitation.
Gaylord, at 298-99. We said further that proof of prior overt conduct was not necessary to justify a conclusion that teaching fitness would be affected.
Here, the teacher's overt immoral conduct has been established by proof beyond a reasonable doubt in a criminal prosecution. Much more than in Gaylord, retention of the respondent would indicate to students adult condonation of criminal conduct, and it cannot be assumed that his ability to teach principles of morality has not been impaired and that his retention would create no danger of expressing approval and imitation.
The affidavit of the respondent, filed in this action, reflects something less than a meticulous candor. While he states that he did not know the motorcycle was stolen, he *437 does not claim that he had no reason to suspect that it may have been.
"`If the meaning of a party's written statement is in doubt, that construction must be adopted which is least favorable to him; "he selected its language."'" Gaylord v. Tacoma School Dist. 10, supra at 294; 2 C. Moore, Facts § 1178, at 1322 (1908).
The respondent does not aver that he made any inquiry as to how the student acquired the vehicle, nor that he asked for a certificate of title, although motorcycles are a special interest of his, and he can surely be expected to be aware that registration is required. See RCW 46.04.670; RCW 46.12. We do have before us the evidence that the respondent knew or should have known, at some time while he had the vehicle in his possession, that it had been stolen. Neither the affidavits which he secured from some of the jurors after the trial nor his affidavit filed in this action refute this fact.
Not only does the affidavit equivocate with respect to the respondent's state of mind during this transaction, but it reveals no regret or remorse on his part nor any concern for the effect that knowledge of his conduct and conviction might have upon his students. Furthermore, he misstates the facts with reference to one matter which is of record in the case. He avers that he was not afforded an opportunity for a hearing, whereas the notice which he received from the board advised him of his right to a hearing and the procedure to follow in obtaining it.
Upon the record before the trial court, that court was justified in determining that conviction of a felony is inherently detrimental to a teacher's performance. The attitude of the respondent demonstrates an insensitivity to the moral problems involved which further supports that conclusion.
The majority repeatedly cites Board of Educ. v. Jack M., 19 Cal.3d 691, 566 P.2d 602, 139 Cal. Rptr. 700 (1977), but does not favor us with a recitation of the facts or the ultimate holding of the case. The teacher in that case had been *438 arrested for alleged homosexual solicitation in a public restroom, but no charges had been filed against him. The incident was not publicized and only the teacher's superiors knew about it. The school district initiated proceedings in superior court to establish its right to discharge the teacher. The trial court resolved conflicting evidence in favor of the teacher. On appeal, the Supreme Court of California found substantial evidence to support the trial court's findings and affirmed. A contention of the school district that the teacher's conduct in itself proved unfitness to teach was rejected. The decision rested on a distinction between persons convicted of a crime and those who have not been convicted. A statute made conviction proof per se of unfitness, with no requirement that a hearing be held before discharging a teacher.[5]
The California court also stressed the fact that the teacher's conduct had not been publicized. It is apparent therefore that the case so often cited in the majority opinion does not support the conclusion reached in this case; and the court in fact recognized that under California statutes (as under our statutes), conviction of a crime is proof of unfitness to teach.
The respondent has shown a disregard for the law and the rights of a fellow citizen. That disregard was of such a serious nature that the criminal laws of the state were invoked. His conduct inevitably detracts from his ability to command the respect and confidence of his students and his colleagues, as well as the school administration. The conviction which followed constituted probable cause for dismissal.
*439 The decision of the Court of Appeals, Division One, should be reversed and the judgment of the Superior Court for Skagit County should be reinstated.
NOTES
[1] On that date, Laws of 1973, ch. 49, § 3 authorized an appeal to the court in lieu of a hearing before the board of directors or a hearing officer. This is the last case to arise under that law. The present law allows a direct appeal only when an employee is given notice of nonrenewal for economic reasons. Laws of 1975, 2d Ex. Sess., ch. 114, § 8.
[2] That law was amended in 1976. RCW 28A.58.480 now holds the superior court to the same standard of review as that which is prescribed in the administrative procedures act, RCW 34.04.130(6).
[3] Requiring a full hearing before the superior court even though none was held before the school board or a hearing officer does not conflict with RCW 28A.58.480, which provided that appeals to superior court be heard de novo. What we said in Foster v. Carson School Dist. 301, 63 Wn.2d 29, 32, 385 P.2d 367 (1963), is applicable to the present case.

Plainly, there cannot be a hearing "de novo" if there has not been an original hearing. This provision of RCW 28.58.480 is therefore inapplicable in a case such as this where there has not been an original hearing ...
(Italics ours.) Thus, RCW 28A.58.480 is inapplicable to this case since no original hearing was held, and consequently there is no conflict between it and RCW 28A.58.515, which explicitly requires the superior court to determine for itself that there was sufficient cause for dismissal.
[4] The amendment (Laws of 1975, 2d Ex. Sess., ch. 114, § 6) followed this court's decision in Francisco v. Board of Directors Dist. 405, 85 Wn.2d 575, 537 P.2d 789 (1975), wherein we held that the superior court on review of a school board's findings and conclusions must pay only minimal deference to the findings and conclusions of the school authority. (Cf. Noe v. Edmonds School Dist. 15, 83 Wn.2d 97, 515 P.2d 977 (1973).) RCW 28A.58.480 now holds the superior court to the same standard of review as that which is prescribed in the administrative procedures act, RCW 34.04.130(6).
[5] An amendment to that statute in 1976 softened its effect by affording a hearing to convicted persons who had received a certificate of rehabilitation pursuant to law, and whose probation had been terminated and the action dismissed.