[No. 18489-7-III.   Division Three.   May 15, 2001.]

SANDRA RUCHERT, ET AL., *Appellants*, v. FREEMAN SCHOOL DISTRICT, *Respondent*.

*Elyse B. Waldman* and *Eric T. Nordlof* (of *Public School Employees of Washington*), for appellants.

*Michael E. McFarland, Jr.* (of *Evans, Craven & Lackie, P.S.*), for respondent.

KURTZ, C.J. — Sandra Ruchert and the Public School Employees of Freeman (hereinafter Ms. Ruchert) appeal a jury verdict finding that she was properly discharged from her employment as a bus driver for the Freeman School

District. Among other contentions, she maintains that the trial court erred by improperly instructing the jury on the standard applied to determine sufficient cause for discharge. We conclude that the challenged jury instruction was erroneous because it permitted the termination of a classified or certified school employee based solely on a showing that the employee committed socially unacceptable, off-site misconduct, unrelated to the employee's job performance.

## FACTS

Sandra Ruchert was employed as a school bus driver by the Freeman School District from the fall of 1994 until her discharge in April 1998. As a school bus driver, Ms. Ruchert was a "classified" employee rather than a "certified" employee. Classified employees are those employees who do not need a teaching certificate to perform their assigned duties for the school district.

In addition to serving as a bus driver for the Freeman School District during the 1997-98 school year, Ms. Ruchert also had two teenage sons attending school in the Freeman School District. In December 1997, Ms. Ruchert permitted her son Jason to invite friends to the Ruchert home for New Year's Eve. Three months later, in March 1998, two parents of students in the Freeman School District contacted Superintendent Harry Amend to inform him of the New Year's Eve party at the Ruchert house and express concern that there was alcohol at the party. Mr. Amend met with a student who had attended the party. The student confirmed that 10 or 15 minors, including 10 Freeman students, were present at the party. The student also confirmed that Ms. Ruchert was present and that there was alcohol at the party.

Based on information obtained from the student, Mr. Amend placed Ms. Ruchert on administrative leave and retained Tom Pickett to perform an independent investigation into the allegations against Ms. Ruchert. Mr. Pickett

interviewed nine students regarding the allegations and reported the results of his investigation to Superintendent Amend. On April 8, 1998, Superintendent Amend notified Ms. Ruchert that he would recommend to the Board of Directors that her employment be terminated. In this notice, Mr. Amend stated that: "[I]t is my conclusion that you did engage in the specific misconduct of providing alcohol to minors in our community during this past year, including students at Freeman High School." Ex. D-23.

In the April 8 notice of recommendation for termination of employment, Mr. Amend presented Ms. Ruchert with the opportunity to submit written materials or information to counter his recommendation. In response, counsel for Ms. Ruchert sent a letter stating that Ms. Ruchert had not been provided with any of the information supporting the District's claims, including any investigative reports, specific allegations, named individuals, times, or specific places. Ms. Ruchert requested the information supporting Mr. Amend's recommendation. The District apparently refused to provide the names of the persons making the allegations against Ms. Ruchert.

At an April 28 Board meeting, Superintendent Amend related the results of Mr. Pickett's investigation. Based on this information, the Board voted to terminate Ms. Ruchert's employment. The next day, Mr. Amend sent Ms. Ruchert a letter advising her of the Board's decision to terminate her employment. In this notice of termination, Mr. Amend summarized the allegations against Ms. Ruchert and again stated that: "[I]t is my conclusion that you did engage in the specific misconduct of providing alcohol to minors in our community during this past year, including students at Freeman High School." Ex. D-25.

After Ms. Ruchert's termination, Public School Employees of Freeman (hereinafter PSE)[1] challenged the District's action pursuant to the collective bargaining agreement, alleging that the District did not have sufficient cause to

---

[1] PSE is an unincorporated labor association serving as the exclusive collective bargaining representative for classified employees of the Freeman School District.

terminate Ms. Ruchert's employment. The matter was processed through the contractual grievance procedure. The Freeman School Board met on June 25 to determine whether the contract grievance was valid. At the hearing, Mr. Amend reviewed the process and the results of Mr. Pickett's investigation. No students testified at the hearing and the District again refused to disclose the names of the students interviewed by Mr. Pickett. The Board denied the contract grievance and affirmed its decision to terminate Ms. Ruchert's employment based on the reasons set forth in its April 29 letter.

Ms. Ruchert and PSE appealed to superior court pursuant to RCW 28A.645.010, alleging there was insufficient cause for the termination of her employment. At trial, the court asked the jury to determine whether Freeman School District had sufficient cause to terminate Ms. Ruchert's employment. The court permitted the parties to augment the record before the Board with additional evidence regardless of whether the evidence was known or disclosed prior to discharge. However, the court would not allow Ms. Ruchert to present evidence that her due process rights had been violated by the Board's refusal to provide her with the names of students interviewed by Mr. Pickett.

At trial, several students testified that students consumed alcohol at Ms. Ruchert's on New Year's Eve. Nick and Helda Dahmen, both Freeman High School students, testified that they accompanied Ms. Ruchert on a shopping trip to purchase alcohol for the party. At the store, Nick and Helda helped Ms. Ruchert pick out the beer that was purchased. Ms. Ruchert purchased Coors that was placed in the refrigerator in Jason Ruchert's room. Later in the evening, students drank the Coors kept in Jason's refrigerator. There were students drinking beer in Jason's bedroom and at least one student was drinking beer in Ms. Ruchert's living room.

Ms. Ruchert testified that she permitted her son Jason to invite some friends over for New Year's Eve; the plan was for these teenagers to spend the night. Ms. Ruchert and her

husband also invited several adult friends over for a party. Carpet cleaners were working in her house the afternoon of December 31, so Ms. Ruchert took Jason, Nick, and Helda with her to buy groceries to get them out of the house. At Yoke's, Ms. Ruchert purchased finger food, beer, champagne, paper cups, napkins, paper plates, and plastic forks. According to Ms. Ruchert, the beer was not intended for the teenagers; she did not know where the beer was placed after they returned to the house. After returning home and putting the other groceries away, Ms. Ruchert left the house at 6:45 P.M. to drop her daughter off at a friend's house, and pick up and drop off some other people.

Ms. Ruchert returned home between 9:00 and 9:30 P.M. and went to bed between 1:00 and 1:30 A.M. During that time, Ms. Ruchert did not see any minors drinking alcohol in her house. She was aware that two teenagers were intoxicated during the party, but she contends they were intoxicated when they arrived. Ms. Ruchert admitted that she heard later that minors were drinking at her house that night and does not dispute that the alcohol was brought into the house or taken from her refrigerator.

The jury concluded that there was sufficient cause for Ms. Ruchert's discharge. Ms. Ruchert and PSE appeal.

## ANALYSIS

■ *Standard of Review.* Jury instructions are sufficient if they (1) permit each party to argue his or her theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987).

■ Generally, the standard for discharge of a unionized school district employee is governed by the collective bargaining agreement. *Wolf v. Columbia Sch. Dist. No. 400*, 86 Wn. App. 772, 777, 938 P.2d 357 (1997). Ms. Ruchert's collective bargaining agreement requires "sufficient cause" for termination. Our understanding of "sufficient cause"

arises largely from cases involving the discharge of teachers. *Id.* at 777. To resolve the question here, we must examine the cases discussing the applicable standards for determining whether sufficient cause exists for discharge of a classified or certified school district employee. The question of whether an employee engaged in misconduct is a question of fact; the question as to whether the misconduct constitutes sufficient cause is a question of law. *See Wright v. Mead Sch. Dist. No. 354*, 87 Wn. App. 624, 629, 944 P.2d 1 (1997).

*The Clarke Rule.* In *Clarke v. Shoreline School District No. 412*, 106 Wn.2d 102, 112-13, 720 P.2d 793 (1986), the court considered whether a handicapped teacher's deficiencies in the classroom constituted sufficient cause for his discharge. For the certified school employee, *Clarke* concluded that:

> Sufficient cause for a teacher's discharge exists as a matter of law where the teacher's deficiency is unremediable and (1) materially and substantially affects the teacher's performance, *or* (2) lacks any positive educational aspect or legitimate professional purpose.

*Id.* at 113-14 (citations omitted). Hence, *Clarke* establishes two separate tests for determining whether a teacher's discharge is supported by sufficient cause.

In *Butler v. Lamont School District No. 246*, 49 Wn. App. 709, 715, 745 P.2d 1308 (1987), we applied the *Clarke* test in the context of a classified employee. Like *Clarke*, *Butler* concerned the on-site job performance of an employee, but unlike *Clarke*, *Butler* involved a classified employee, a bus driver. On appeal, the issue before the court was whether the trial court applied the proper test to define "justifiable cause" for discharge. *Butler*, 49 Wn. App. at 711. The court reasoned that just cause for classified employees was similar to just cause for certified employees and applied the *Clarke* rule. *Butler*, 49 Wn. App. at 715.

*Jury Instruction No. 9.* Here, the jury was instructed regarding "just cause" as follows:

*Sufficient cause for discharge exists where the conduct complained of lacks any positive or legitimate professional purpose.*

If you find that the conduct of Sandra Ruchert lacked any positive aspect or legitimate professional purpose, then you must return a verdict against the plaintiff, Sandra Ruchert, and in favor of the defendant, Freeman School District.

On the other hand, if you do not find that the conduct of Sandra Ruchert lacked any positive aspect or legitimate professional purpose, then your verdict should be for the plaintiff, Sandra Ruchert.

Jury Instruction No. 9, Clerk's Papers (CP) at 270 (emphasis added). Significantly, the jury was instructed on only the second of the two tests set forth in the *Clarke* rule.

Ms. Ruchert objected to this instruction arguing that a nexus had to be established between the conduct and her job performance. Ms. Ruchert contends that Jury Instruction No. 9 is an erroneous statement of law because the instruction's statement of sufficient cause for terminating a classified school employee omits the first part of the *Clarke* rule. Moreover, she contends the question of remediability must be applied to both tests set forth in *Clarke*. The District contends the instruction correctly states the applicable law by omitting the test that is not applicable.

*Two Tests.* Ms. Ruchert assigns error to the trial court's refusal to instruct the jury regarding both parts of the *Clarke* rule. *Clarke* establishes two tests for the discharge of teachers. The two tests are stated in the alternative: whether the teacher's deficiency materially and substantially affects performance, or whether the teacher's deficiency lacks any positive educational aspect or legitimate professional purpose. *Clarke*, 106 Wn.2d at 113-14. The trial court did not abuse its discretion by refusing to instruct the jury on both of the *Clarke* tests.

*Remediability.* Ms. Ruchert next argues that the question of remediability must be considered under both standards of the *Clarke* rule. She is mistaken. In *Sauter v. Mount Vernon School District No. 320*, 58 Wn. App. 121, 128, 791 P.2d 549 (1990), Division One of this court examined

whether sufficient cause for discharge was present where a teacher had attempted to seduce a student during school hours. The *Sauter* court, examining the *Clarke* rule, determined that the *Clarke* court did not intend that remediability apply to both of the *Clarke* tests, and applied remediability only to the first test. *Sauter*, 58 Wn. App. at 131. In *Wright*, we agreed with *Sauter* and concluded that remediability is not considered when the conduct in question lacks a positive educational aspect or legitimate professional purpose. *Wright*, 87 Wn. App. at 630-31.

*Job-relatedness.* Lastly, Ms. Ruchert argues that Jury Instruction No. 9 is an inadequate instruction because it does not require a nexus or relationship between the cause for discharge and her job performance. We agree. The *Clarke* rule was developed, and is usually applied, to assess the on-site job performance or deficiencies of school district employees. The courts in *Clarke*, *Butler*, and *Sauter* examined job-related conduct or conduct that took place largely, if not completely, on school property. This underlying nexus is suggested by the language of the *Clarke* rule that refers to "deficiencies" rather than "conduct." From our examination of these cases, we conclude that the *Clarke* rule presumes a nexus between the conduct in question and the employee's job performance. Part of the difficulty in fashioning a jury instruction here is that Ms. Ruchert's conduct did not take place on school property during school hours and may or may not be related to her performance as a bus driver and a classified school employee.

■ Prior to *Clarke*, the Supreme Court decided *Hoagland v. Mount Vernon School District No. 320*, 95 Wn.2d 424, 623 P.2d 1156 (1981). Mr. Hoagland, a shop teacher, had been discharged after the school district discovered that he had been convicted of grand larceny. *Id.* at 425. The *Hoagland* court reasoned that one's status was insufficient to justify discharge without an actual showing of impairment to teaching. *Id.* at 428. In determining whether a teacher's conduct substantially undermined his

effectiveness, the *Hoagland* court considered the propriety of the discharge in light of:

> (1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the rights of the teachers involved or of other teachers.

*Id.* at 429-30; *accord Clarke*, 106 Wn.2d at 114.

Subsequent cases confirm that the *Hoagland* factors must be considered when evaluating the job-relatedness of a school employee's alleged misconduct. After adopting the rule for examining job-related "deficiencies," the *Clarke* court listed the *Hoagland* factors and made two observations:

> First, not all eight factors will be applicable in every teacher discharge case. Second, these factors are not necessarily applicable when the cause for dismissal is the teacher's improper performance of his duties. They were designed to ensure that "when a teacher's status or conduct outside his profession is the basis for his dismissal, that cause is related to his performance of his duties as a teacher." Nevertheless, these factors are helpful in determining whether a teacher's effectiveness is impaired by his classroom deficiencies.

*Clarke*, 106 Wn.2d at 114-15 (citations omitted).

Similarly, the *Sauter* court reasoned that the *Hoagland* factors were inapplicable because "we are not faced with conduct involving a teacher's private life unrelated to school activities." *Sauter*, 58 Wn. App. at 132. As Division One of this court explained again in a later case:

> Because the eight *Hoagland* factors are designed to assure [sic] that, when a teacher's status or conduct outside his profession is the basis for his dismissal, that cause is related to his performance of his duties as a teacher, *Hoagland*, 95 Wn.2d at 428, those factors are not necessarily applicable when the

cause for dismissal is the teacher's improper performance of his duties.

*Simmons v. Vancouver Sch. Dist. No. 37*, 41 Wn. App. 365, 378-79, 704 P.2d 648 (1985).

We conclude that different standards apply based on whether the cause for dismissal relates to the employee's job performance or whether the discharge is based on the employee's status or conduct outside these duties. When the cause for dismissal is based on the employee's job performance, either one or both of the *Clarke* tests may apply. But application of these tests may or may not require consideration of some or all of the *Hoagland* factors. In contrast, when a school district employee's status or conduct outside his or her job duties is the basis for discharge, the *Hoagland* factors must be considered along with the second *Clarke* test. Consequently, we conclude that in status or conduct cases, the jury must be instructed on the applicable *Clarke* tests and the applicable *Hoagland* factors so that the jury can determine whether the cause for discharge is related to the individual's ability to perform his or her job as a school employee.[2]

The District maintains that Ms. Ruchert's conduct lacked any positive educational aspect or legitimate professional purpose and that this conduct should be addressed under the *Clarke* rule without any consideration of the *Hoagland* factors. In short, the District takes the position that some conduct is so unacceptable that it warrants discharge without regard to whether the conduct is job-related. To support this argument, the District relies on two cases of Division Three of this court, *Wright v. Mead School District No. 354*, 87 Wn. App. 624, 944 P.2d 1 (1997) and *Wolf v. Columbia School District No. 400*, 86 Wn. App. 772, 938 P.2d 357 (1997).

The *Wright* court considered the discharge of Shawn

---

[2] Strict application of the *Hoagland* factors creates some problems because Ms. Ruchert is a bus driver and not a teacher. The trial court will need to modify the *Hoagland* instruction to fit the facts of this case including Ms. Ruchert's position as a classified employee.

Wright, a junior high music teacher. Mr. Wright was employed by Mead School District from 1988 to 1994. In 1993, Mead learned that a complaint had been filed against Mr. Wright alleging inappropriate conduct by Mr. Wright when he was a teacher in the Spokane School District. *Wright*, 87 Wn. App. at 626. After an investigation, Mr. Wright was discharged. The hearing examiner determined that from 1982 through 1987, Mr. Wright had engaged in sexual contact with two Lewis and Clark high school students. The issue before the court was whether this conduct provided Mead with sufficient cause to discharge Mr. Wright.

Recognizing that an individual's status will not support a discharge, the *Wright* court went on to apply both the *Clarke* rule and the *Hoagland* factors. *Wright*, 87 Wn. App. at 629-31. Applying the *Clarke* rule, the *Wright* court, like the *Sauter* court, concluded that the remediable nature of the conduct was not at issue when the conduct in question lacked a positive educational aspect or legitimate professional purpose. *Wright*, 87 Wn. App. at 631. Additionally, the court emphasized that sexual misconduct is viewed in a special light. The court explained that: "Even if remediability was a factor, this court has previously held that sexual misconduct is conduct which cannot be remedied." *Id*. Significantly, after concluding that Mr. Wright's conduct lacked a positive educational aspect or legitimate professional purpose, the court applied the *Hoagland* factors to determine whether sufficient cause existed to justify Mr. Wright's discharge. *Id*.

*Wright* is particularly instructive here because the *Wright* court applied the second test contained in the *Clarke* rule, along with the *Hoagland* factors. Hence, *Wright* does not support the District's position that unacceptable conduct alone justifies discharge. By applying both *Clarke* and *Hoagland*, *Wright* supports the argument that the *Hoagland* factors are applicable to either test contained in the *Clarke* rule. More importantly, *Wright*, like *Hoagland*, demonstrates that if the discharge is based on conduct or prior status, a nexus must be shown between the conduct

and the employee's job performance.

The District also asserts that *Wolf* establishes that the *Hoagland* factors are inapplicable here. The *Wolf* court considered the discharge of Galen Wolf, a custodian and maintenance worker, discharged for firing a BB gun while on duty at the school district's maintenance facility. *Wolf* approved the use of a jury instruction that read as follows:

> "Just cause for discharge exists where the conduct complained of is: (1) unremediable and, (2) materially and substantially affects an employee's performance. Just cause also exists if the conduct complained of is so clearly unacceptable that it entitled the district to discharge the employee without regard to prior warning."

*Wolf*, 86 Wn. App. at 775. The *Wolf* jury instruction substitutes the word "conduct" for the word "deficiencies" in the first sentence of the *Clarke* rule. But the instruction applies the *Clarke* rule and contains an additional sentence for the jury to apply in the context of the on-site, on-duty conduct of Mr. Wolf, a classified employee.

Significantly, the question of job-relatedness was not at issue in *Wolf*. There was no dispute that the district had a policy prohibiting the possession of dangerous weapons on school grounds and that Mr. Wolf test-fired a weapon several times near the rear wall of a maintenance facility while people were outside the building. *Wolf*, 86 Wn. App. at 774-75. *Wolf* addressed evidentiary questions and the issue of remediability; *Wolf* cannot be read to establish that egregious conduct totally unrelated to job performance may justify discharge. The holding in *Wolf* is limited by its facts and the jury instruction approved in *Wolf* is not a complete statement of the law.

Conceding that some showing of job-relatedness may be required, the District next argues that the *Hoagland* factors are inapplicable here because Ms. Ruchert's conduct was school-related in that the party was attended by students who attended Freeman schools. In other words, the District suggests that job-relatedness is established

whenever the employee's conduct involves student participation. Citing *Coupeville School District No. 204 v. Vivian*, 36 Wn. App. 728, 677 P.2d 192 (1984), the District maintains that any misconduct involving students meets the second test of the *Clarke* rule without any additional showing.

*Coupeville* does not support the District's argument that the *Hoagland* factors are inapplicable here. The *Coupeville* court considered off-site activities between a teacher and two students. The teacher had met two underage, female students at school, driven them to his home, and permitted them to consume alcohol. *Coupeville*, 36 Wn. App. at 731-32. However, even though the misconduct occurred mostly off-site, the misconduct resulted from the teacher-student relationships developed at school. Here, the District presented no evidence indicating that the students attending the party rode Ms. Ruchert's bus or that she somehow used her position to entice students to attend the party. Of greater significance, the *Coupeville* court applied the *Hoagland* factors to determine whether the teacher's conduct would materially and substantially affect his performance in the classroom.

## CONCLUSION

In summary, the trial court abused its discretion by giving Jury Instruction No. 9 without giving an additional instruction based upon the applicable *Hoagland* factors. In determining whether Ms. Ruchert's conduct lacked any positive educational aspect or legitimate professional purpose, the jury needed to consider the *Hoagland* factors to determine whether the conduct in question was related to Ms. Ruchert's job performance as a bus driver and a classified school employee. Without the additional instruction, Jury Instruction No. 9 authorized Ms. Ruchert's termination based solely on a showing that she committed socially unacceptable, off-site misconduct that may or may not have been related to her job performance. This is not the law. *Wright* and *Hoagland* establish that when the *Clarke* rule is applied to conduct or prior status, the relevant

217

*Hoagland* factors must be examined to establish job-relatedness.

We reverse, remand, and deny the District's request for attorney fees.

SWEENEY and KATO, JJ., concur.

Review denied at 145 Wn.2d 1005 (2001).