[No. 66167-1-I.   Division One.   December 27, 2011.]

Juli Griffith et al., *Appellants*, v. Seattle School District No. 1, *Respondent*.

664

*James A. Gasper*, for appellants.

*Tracy M. Miller* (of *Karr Tuttle Campbell*), for respondent.

¶1 APPELWICK, J. — Teachers Griffith and Quarto refused to follow explicit direction from their principal to administer a federally-mandated test to six special education students. After each missed a key deadline, they asserted parental refusals as the reason. The school district suspended each teacher for 10 days without pay for insubordination. A hearing officer determined they refused to give the test on principle, not due to parental refusal. The hearing officer upheld the 10-day suspension. Finding no error, we affirm.

## FACTS

¶2 Pursuant to the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 (2002), and the Individuals with Disabilities Education Act of 2004 (IDEA), 20 U.S.C. § 1400 (2010), special education students' progress must be regularly assessed. During the applicable time period, the default

method of testing in Washington was the Washington Assessment of Student Learning (WASL). Ch. 28A.655 RCW. Students unable to participate in WASL testing may alternatively be tested with the Washington Alternative Assessment of Student (WAAS) portfolio. Ch. 28A.155 RCW.

¶3 Under the IDEA, special education teachers are responsible for developing, implementing, and updating individual education plans (IEPs) that outline goals for each student with special education needs. 20 U.S.C. § 1414; WAC 392-172A-03090. Parents play a vital role in the IEP process and are part of the IEP team. 20 U.S.C. § 1414 (d)(1)(B). If the IEP team determines that a student must take an alternate test, the IEP must contain a statement explaining why the alternate test is appropriate. 20 U.S.C. § 1414(d)(1)(A)(i)(I)(cc); RCW 28A.155.045. However, the relevant statutes and regulations do not contemplate disclosing to parents the apparent right to refuse testing, nor do they affirmatively require consent for a child to be tested.

¶4 Juli Griffith and Lenora Quarto teach severely disabled children at Green Lake Elementary School. They are, by all accounts, dedicated and good at their jobs.

¶5 Together, the teachers had a total of six WAAS-eligible students in 2008.[1] In November 2008, Griffith and Quarto were directed to participate in WAAS training to take place on December 1. Pursuant to an agreement between Griffith and Quarto that they would not both be absent at the same time, Griffith did not attend the training. On December 3, 2008, Green Lake Elementary Principal Cheryl Grinager sent a written warning to Griffith indicating that Griffith's failure to attend the training "is viewed as insubordination." She informed Griffith that "Human Resources will be notified regarding next steps in addressing this issue."

---

[1] The briefs inconsistently refer to either five or six WAAS-eligible students. There are six written refusals in the administrative record.

¶6 On November 20, Quarto wrote to Judy Kraft, an alternate assessment specialist for the state of Washington, that she did "not want to administer the WAAS." She indicated that the test is "inauthentic" and "ridiculous" for the students she teaches, and she characterized giving the test as "jumping through the golden WAAS hoop just so it appears that our school is making 'adequate yearly progress.'" Quarto said that she is "the voice that [her] students do not have." Her main concern was "what will happen when I refuse to administer this test." The message does not mention parental refusals as a justification for her concerns.

¶7 Grinager met with Quarto and Griffith on November 24. She memorialized that meeting on November 26 in identical letters to each teacher. The letters stated that the teachers indicated they would not use the WAAS, and informed them that failure to give the WAAS would be considered insubordination. The letters also recorded the teachers' unwillingness to attend training and directed them to go to training. Not doing so would be viewed as insubordination.

¶8 Also on November 26, the teachers wrote that the test is "inappropriate and unattainable," and "not authentic or relevant for our student population." They argued that "[w]e have a legal obligation to serve our students and fulfill their IEP minutes. Participation in the WAAS process detracts from the implementation of their IEP goals and objectives."[2] Finally, the teachers asserted that "[a]dministering the WAAS to our students in order to maintain the appearance of adequate yearly progress is not in the best interest of our students and their families."

¶9 On December 2, Kraft responded to Quarto's November 20 e-mail. Kraft explained that the test is federally mandated, and that Griffith and Quarto should think long

---

[2] The students' IEPs do not include the district form explaining the WAAS portfolio. There are no specific findings on the issue, but it appears from the record that the form's absence is attributable to the teachers.

and hard about their beliefs and whether the teachers were really benefitting the children.

¶10 On December 3, Grinager informed Griffith that her failure to attend the December 1 training constituted insubordination.

¶11 The teachers missed a key deadline to submit WAAS testing data on December 12. On January 7, 2009, after Grinager requested the data, Quarto wrote to Grinager that "the WAAS is just not appropriate for my students."

¶12 On January 30, 2009, Quarto and Griffith met with school administrators. Jeannette Bliss, the district's employee/labor relations manager, memorialized that meeting in two February 10 letters. The letters indicated that the teachers admitted they had received directions to administer the WAAS but did not do so. By refusing, the teachers missed a critical data checkpoint on December 12. The teachers stated they did what the parents wanted them to do, but when asked how many parents had submitted written documentation, they did not know the answer. The letters stated that the teachers were taking their position as a matter of principle and informed them that the district was contemplating a two-week suspension for each teacher.

¶13 Parents of the six WAAS-eligible students submitted written refusals on January 27, February 1, February 3, February 11, February 12, and May 14, 2009. None of the six letters indicated that the parents discussed the test with the teachers in 2008 or made and communicated their decision in 2008.

¶14 On March 2, 2009, Superintendent Maria Goodloe-Johnson sent disciplinary letters to Griffith and Quarto. Both letters stated that the teachers had refused to administer the WAAS and missed data checkpoints, and that the first time they voiced any concern over the process of obtaining parent exemptions was in the February 24, 2009 meeting. The letter to Griffith also stated that Griffith did not attend a training she was ordered to attend and

subsequently missed further opportunities to receive the required training. Goodloe-Johnson concluded that the teachers were taking the position as a matter of principle. She imposed a 10-day unpaid suspension on each teacher.

¶15 Each teacher filed a notice of appeal to determine if there was sufficient cause to impose the suspensions and exercised their right to be heard before a hearing officer. At the hearing, only two parents testified. The parent of student 1 did not recall the assessment being on her radar until after Christmas break. At that point, she did research and determined she did not want her daughter to take the test. The parent of student 4 testified that she decided to refuse the WASL at a December 8 IEP amendment meeting. She put the refusal into writing after she heard that the teachers might be suspended.

¶16 At the hearing, Griffith testified that she does not professionally agree with the WAAS. She also testified that she told Grinager she received parent verbal requests not to administer the WAAS and that no one told her a refusal had to be in writing to be effective. She said she discussed parental refusals as a factor for her actions in meetings on January 21 and January 30.

¶17 Quarto testified that the WAAS is not authentic and not relevant. However, she also testified that she received verbal refusals from three parents in the fall of 2008. She stated that the main reason for her refusal was parental refusal, and that she did not know the refusals had to be in writing until the January 30 meeting.

¶18 Grinager testified that the teachers told her in November 2008 that they would not comply with the order to give the WAAS. In December, she had no written knowledge that there were parents who did not want to have their children assessed. She thought the teachers may have told her that there were parents who did not want their children tested, but she could not specifically recall. She told the teachers she needed the refusals in writing.

¶19 The hearing officer determined that the district had sufficient cause to suspend the teachers.[3] Importantly, it determined that the teachers based their refusals on principle and not on parental refusals. As to Griffith, the hearing officer requested further information regarding whether the district was pursuing any further action based on Griffith's failure to attend WAAS training. The hearing officer ultimately determined the suspension was solely for Griffith's failure to administer the test.

¶20 The superior court affirmed the hearing officer's decision. Griffith and Quarto appeal.

## DISCUSSION

### I. Sufficient Cause

¶21 A hearing officer's decision to uphold an adverse change in a teacher's contract may be overturned only if the decision was:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the board or hearing officer; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(6) Arbitrary or capricious.

RCW 28A.405.340.

¶22 A court reviewing the factual determinations of a hearing officer considers whether those determinations are clearly erroneous. *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 109, 720 P.2d 793 (1986). When reviewing the application of the law to the facts, a reviewing court makes a

---

[3] The teachers do not rely on their collective bargaining agreement or employment contract.

de novo determination of the applicable law but examines the hearing officer's factual determinations under the clearly erroneous standard. *Id.* The court reviews the findings and conclusions of the hearing officer; it owes no deference to the superior court's decision. *See, e.g., id.* at 110-11.

¶23 Whether a teacher actually engaged in certain conduct or was deficient in her practices or methods is a factual question. *Id.* at 110. However, a determination that sufficient cause exists is a legal conclusion. *Id.* Therefore, a hearing officer's conclusion of law as to the definition of sufficient cause should not be disturbed unless it constitutes an error of law. *Id.* So long as the factual findings are not clearly erroneous, the court is free to determine the correct law and apply it to the facts as found by the hearing officer. *Id.*

¶24 We turn first to the hearing officer's findings that Griffith and Quarto refused to administer the WAAS based on personal belief and principle, not parental refusals.

¶25 The teachers testified that their refusal to administer the WAAS was based on both their professional judgment and parental objection. However, when the misconduct occurred, between the fall of 2008 and January 2009, the teachers justified their refusal by referring to the test as "ridiculous," "not authentic or relevant," "inappropriate and unattainable," and a "golden WAAS hoop." They argued that the WAAS "is just not appropriate for my students," and "is not in the best interest of our students and their families." Quarto wrote to a state expert to express her unwillingness to give the test but did not even mention parental objections. Despite a series of letters and e-mails between the teachers and administration, there is no written reference to parental refusals until late January. Only when confronted with the possibility of discipline did the

teachers assert that their actions were justified based on parental refusals.[4]

¶26 Eventually, parents of the six students submitted written refusals. But, the misconduct occurred between the fall of 2008 and the beginning of January 2009. The first letter did not arrive until January 27. Four more arrived in February, and one came in May. None of the six letters included any indication that the parents expressed their refusal to the teachers in the fall of 2008. At the hearing, only two parents testified. The parent of student 4 testified that she verbally refused the WASL at a December 8 IEP amendment meeting. The parent of student 1 testified that she did not even know about the WAAS until after Christmas break.

■ ■ ¶27 Because of the testimony taken, the finding that the teachers refused to administer the test based on principle is necessarily based on credibility determinations about testimony to the contrary. We will not disturb such determinations on appeal. In light of the administrative record, the hearing officer's findings that the teachers acted on principle are not clearly erroneous.

■ ¶28 Next, the teachers argue that their actions do not constitute insubordination. A teacher is insubordinate if she willfully refuses to obey a reasonable regulation governing her conduct. *See, e.g., Simmons v. Vancouver Sch. Dist. No. 37*, 41 Wn. App. 365, 379, 704 P.2d 648 (1985) (discharge for insubordination appropriate where teacher continued to use corporal punishment despite repeated warnings to stop using physical force against students). The teachers argue that they were entitled to rely on parents' wishes that their children not take the test; that there was no reasonable, articulated directive; and that there was no referable policy about how to obtain parental refusals.

---

[4] Parents apparently do have the right to refuse to have their children tested. There is no citation to legal authority provided for this assertion, but it is not disputed by the district.

■ ¶29 But, the teachers refused to administer the test based on principle, not on uniformly expressed parental objection. Their argument that there were no referable policies about how to obtain parental refusals is not relevant to their insubordination. The teachers were specifically instructed to administer the WAAS on multiple occasions. They were informed that failure to do so would be considered insubordination. A state of Washington employee who oversees alternate assessments informed Quarto that the test is federally mandated. Despite these directions, it is undisputed that Griffith and Quarto refused to give the test. They did so on principle. These facts are sufficient to support a finding of insubordination.

■ ¶30 The teachers' insubordination is sufficient cause for a 10-day unpaid suspension. While sufficient cause is not defined by statute, sufficient cause for discharge is well defined by case law. *See* RCW 28A.405.300; *see also Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 261 P.3d 145 (2011); *Clarke*, 106 Wn.2d 102; *Hoagland v. Mount Vernon Sch. Dist. No. 320*, 95 Wn.2d 424, 623 P.2d 1156 (1981). Under *Clarke*, sufficient cause for discharge exists where the teacher's deficiency is unremediable and (1) materially and substantially affects the teacher's performance or (2) lacks any positive educational aspect or legitimate professional purpose. 106 Wn.2d at 113-14. The hearing officer considers (1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the rights of the teachers. *Hoagland*, 95 Wn.2d at 429-30. But, not all eight factors are applicable in every case, and they may not apply at all when the cause for discipline is the teacher's improper performance of her teaching duties. *Clarke*, 106 Wn.2d at 114.

¶31 Here, the hearing officer applied the *Hoagland* factors but noted that they are not all that relevant because the issues are the improper performance of the teachers' duties and insubordination. *See Clarke*, 106 Wn.2d at 114. We share the hearing officer's reservations. First, the factors were developed to ensure that when a teacher's conduct outside her profession is the basis for dismissal, that the conduct is related to the performance of her duties as a teacher. *Id.* at 114-15. But, they may also be helpful in determining whether a teacher's effectiveness is impaired by her classroom deficiencies. *Id.* at 115. Griffith's and Quartos' insubordination concerned their refusal to perform their teaching duties. This occurred outside of the classroom, but their nonperformance, not administering the test, could constitute a classroom deficiency. Thus, it is debatable whether the factors apply in this case. Second, because the issue is whether the teachers refused to perform required duties, as opposed to how they performed their duties, the teacher's conduct could be a violation of either prong of the *Clarke* test. Under the second prong, it is unclear to what extent the factors apply. Third, when determining if there is sufficient cause for discipline less than discharge, it is likewise unclear to what extent, if at all, the *Clarke* test and the eight *Hoagland* factors apply.

¶32 We need not resolve these issues here. *Clarke* at least indicates that considering the factors may be helpful. *Id.* Assuming the factors were applicable, we find no error in the hearing officer's findings. Those findings, in turn, support the conclusion that the district had sufficient cause to suspend Griffith and Quarto.

¶33 The teachers also take issue with the hearing officer's conclusion that less sufficient cause is required for suspension than is required for discharge. In *Denton*, the court determined that conduct that constitutes sufficient cause for revocation of a license to teach is also sufficient cause for discharge from a teaching position, which is less severe than revocation. *Denton v. S. Kitsap Sch. Dist. No.*

*402*, 10 Wn. App. 69, 72, 516 P.2d 1080 (1973). At a minimum, *Denton* leads to the commonsense conclusion that sufficient cause for discharge is also sufficient cause for suspension. The hearing officer's further determination that less sufficient cause is necessary for suspension is logically and legally sound. The consequences of suspension are not as severe as the consequences of discharge and the sufficient cause necessary for suspension is accordingly lower.[5]

¶34 Even if the *Hoagland* factors did not apply, RCW 28A.405.060 provides that the district may withhold pay from teachers who do not faithfully comply with district or state rules and regulations. Judicial precedent establishes that insubordination can be sufficient cause for discharge. *See, e.g., Simmons*, 41 Wn. App. 365. Read together, it is clear that insubordination and refusal to give a federally mandated test can constitute sufficient cause for an unpaid suspension. Once sufficient cause is established, the choice of sanction is a policy decision made by the district that is reviewed to determine if it is arbitrary, capricious, or contrary to law. *Butler v. Lamont Sch. Dist. No. 246*, 49 Wn. App. 709, 712, 745 P.2d 1308 (1987).

¶35 The hearing officer's findings that Griffith and Quarto refused to administer the WAAS based on principle are not clearly erroneous. Those findings constitute sufficient cause for a 10-day unpaid suspension. The discipline was consistent with the discipline imposed on another teacher who refused to give the WASL, also on principle. The district's choice of discipline was not arbitrary, capricious, or contrary to law.

II. Griffith Was Not Punished Twice for the Same Conduct

¶36 Griffith argues the hearing officer committed an error of law by allowing Griffith to be twice disciplined for

---

[5] According to the teachers' argument, the school district could not impose any discipline until the misconduct was severe enough to provide sufficient cause for discharge. This is not the law and, if it were, the school district would have no incentive to use any discipline other than discharge.

the same conduct. Griffith received a written warning for refusing to attend WAAS training. Subsequently, she received a 10-day suspension identical to Quarto's punishment. When she was suspended, her letter of probable cause also mentioned her failure to attend WAAS training. But, Goodloe-Johnson testified that the suspension was only for Griffith's refusal to administer the WAAS. Grinager testified that, after the written warning, she did not impose any further discipline on Griffith for refusing to attend training. The hearing officer concluded that Griffith's failure to attend training was not a basis of her suspension. That finding is not clearly erroneous.

¶37 We affirm.

DWYER, C.J., and GROSSE, J., concur.

Review denied at 174 Wn.2d 1004 (2012).